*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0145p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

INDIANA STATE DISTRICT COUNCIL OF
LABORERS AND HOD CARRIERS PENSION AND
WELFARE FUND, on behalf of itself and all
others similarly situated,

>                   *Plaintiff*,

CEMENT MASONS LOCAL 526 COMBINED
FUNDS; LABORERS DISTRICT COUNCIL
CONSTRUCTION INDUSTRY PENSION FUND,

>             *Plaintiffs-Appellants*,

>     *v.*

OMNICARE, INC.; JOEL F. GEMUNDER; DAVID
W. FROESEL, JR.; CHERYL D. HODGES;
EDWARD L. HUTTON; SANDRA E. LANEY,

>             *Defendants-Appellees*.

No. 12-5287

Appeal from the United States District Court
for the Eastern District of Kentucky at Covington.
No. 2:06-cv-26—William O. Bertelsman, District Judge.

Argued: January 15, 2013

Decided and Filed: May 23, 2013

Before: COLE and GRIFFIN, Circuit Judges; GWIN, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Eric Alan Isaacson, ROBBINS GELLER RUDMAN & DOWD LLP, San Diego, California, for Appellants. Harvey Kurzweil, WINSTON & STRAWN LLP, New York, New York, for Appellees. **ON BRIEF:** Eric Alan Isaacson, Henry Rosen, Jennifer L. Gmitro, Amanda M. Frame, ROBBINS GELLER RUDMAN & DOWD LLP, San Diego, California, for Appellants. Harvey Kurzweil, Richard W. Reinthaler, John E. Schreiber, WINSTON & STRAWN LLP, New York, New York, Wm. T. Robinson

_____

[*]The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

III, Michael E. Nitardy, FROST BROWN TODD LLC, Florence, Kentucky, for Appellees.

COLE, J., delivered the opinion of the court in which GRIFFIN, J., and GWIN, D. J., joined.  GWIN, J. (pp. 18–19), delivered a separate concurring opinion.

———————————

**OPINION**

———————————

COLE, Circuit Judge.  Plaintiffs, all Omnicare investors, appeal the dismissal of their securities suit under § 11 of the Securities Act of 1933, 15 U.S.C. § 77k (2010), against Defendants Omnicare, Inc., its officers, and directors.  Plaintiffs allege that Defendants made material misstatements and/or omissions in a Registration Statement filed with the Securities and Exchange Commission in connection with a December 2005 public stock offering.  The district court held that Plaintiffs had not adequately pleaded knowledge of wrongdoing on the part of Defendants and dismissed the complaint for failure to state a claim upon which relief can be granted.  Plaintiffs seek reversal of the district court's dismissal order on the grounds that § 11 is a strict liability provision.  For the following reasons, we REVERSE and REMAND in part and AFFIRM in part.

I.

Defendant Omnicare is the nation's largest provider of pharmaceutical care services for the elderly and other residents of long-term care facilities in the United States and Canada.  *Ind. State Dist. Council v. Omnicare Inc.*, 583 F.3d 935, 938 (6th Cir. 2009) (hereinafter "*Omnicare I*"); *Ind. State Dist. Council v. Omnicare Inc.*, 527 F. Supp. 2d 698, 700-01 (E.D. Ky. 2007).  During the relevant time period, Defendant Joel Gemunder was Omnicare's Chief Executive Officer; Defendant David Froesel was Omnicare's Chief Financial Officer and a Senior Vice President; Defendant Cheryl Hodges was Omnicare's Secretary and a Senior Vice President; Defendant Edward

Hutton was Chairman of the Board of Directors;[1] and Defendant Sandra Laney was a Director.

Plaintiffs are investors who purchased Omnicare securities in a December 15, 2005, public offering. In conjunction with the public offering, Omnicare offered 12.8 million shares of common stock and made related filings with the Securities and Exchange Commission. These filings were incorporated into a Registration Statement which is central to the current litigation. Plaintiffs did not hold the stock long. They sold all of these securities by January 31, 2006.

Plaintiffs seek relief under § 11 of the Securities Act of 1933, 15 U.S.C. § 77k. Section 11 provides a remedy for investors who have acquired securities under a registration statement that was materially misleading or omitted material information. It imposes liability on issuers and signers of registration statements containing untrue statements or omissions of material fact. 15 U.S.C. § 77k(a). Section 11 also imposes liability on the directors of the issuer. *Id.* at § 77k(a)(2).

According to the Third Amended Complaint[2], Omnicare was engaged in a variety of illegal activities including kickback arrangements with pharmaceutical manufacturers and submission of false claims to Medicare and Medicaid. Plaintiffs allege that representations in the Registration Statement were material, untrue and misleading because they effectively concealed Omnicare's illegal activities from its investors. According to the Plaintiffs, the Registration Statement stated "that [Omnicare's] therapeutic interchanges were meant to provide [patients with] . . . more efficacious and/or safer drugs than those presently being prescribed" and that its contracts with drug companies were "*legally and economically valid* arrangements that bring value to the healthcare system and patients that we serve." Plaintiffs claim that given Omnicare's alleged illegal activities, these and other statements indicating compliance with the law

---

[1] According to Defendants, Mr. Hutton is deceased.

[2] Although the Third Amended Complaint is titled "Second Amended Consolidated Complaint," it is the third amendment to the original complaint in this litigation. The parties and the district court have consistently referred to it as the "Third Amended Complaint."

were misleading.    Specifically, Plaintiffs allege that these statements of "legal compliance" made in the Registration Statement were material, false and misleading, and therefore in violation of § 11.

Furthermore, Plaintiffs allege that Omnicare failed to comply with Generally Accepted Accounting Principles ("GAAP"), such that the financial statements filed in connection with the December 2005 public offering substantially overstated the company's revenue.    Therefore, according to Plaintiffs, the financial statements contained material misstatements and omissions in violation of § 11.

Plaintiffs filed this case in the United States District Court for the Eastern District of Kentucky in February 2006 as a putative securities class action, alleging claims for violations of § 10(b), Rule 10b-5 and § 20(a) of the Securities and Exchange Act of 1934.  *Omnicare I*, 583 F.3d at 939.  A class was never certified.  Plaintiffs later amended the complaint, adding a claim under § 11 for material misstatements and omissions in the Registration Statement.  That § 11 claim is the basis of the instant appeal.

Defendants moved to dismiss the complaint on a variety of grounds.  On October 12, 2007, the district court granted Defendants' motion and dismissed the complaint in its entirety.  *Omnicare*, 527 F. Supp. 2d at 712.  With respect to the § 10(b), Rule 10b-5 and § 11 claims, the district court determined that Plaintiffs had failed to plead loss causation—the causal connection between a defendant's misconduct and the plaintiff's loss.  *Id*. at 704-05.  The claim made under § 20(a) was dismissed as well.  *Id*. at 711. Plaintiffs appealed.

On October 21, 2009, this Court affirmed the judgment of the district court with respect to all claims except the § 11 claim.  We held that "loss causation" is not an element of a § 11 claim but is instead an affirmative defense.  *Omnicare I*, 583 F.3d at 947. Accordingly, we determined that the district court had erred by requiring Plaintiffs to plead loss causation in order to state their § 11 claim.  We remanded the case to district court for further analysis.  *Id*. at 948.

Plaintiffs pursued a writ for certiorari, which they later dismissed, and then moved for leave to amend the complaint in order to re-plead the § 11 claim. The motion was granted. The Third Amended Complaint encompasses two types of § 11 allegations: (1) material misstatements and omissions made with reference to the statements of "legal compliance"; and (2) material misstatements and omissions in reference to GAAP. Defendants filed a motion to dismiss the Third Amended Complaint.

On February 13, 2012, the district court granted Defendants' motion, concluding that because the Plaintiffs' § 11 claim "sounds in fraud," it was subject to but failed to meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). The court furthermore held that, for both claims asserted under § 11, Plaintiffs were required, but failed to plead, knowledge of falsity on the part of the Defendants. Because the court found that the complaint failed to satisfy the pleading standards of Rule 9(b), and because Plaintiffs had not sufficiently pleaded Defendants' knowledge of falsity, the complaint was dismissed. Plaintiffs again appealed.

## II.

Whether the district court properly dismissed a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is a question of law subject to de novo review. *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006). The court must construe the complaint in a light most favorable to the plaintiff and accept all factual allegations as true. *Id*. at 688. The factual allegations must "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Stated otherwise, the Rule 12(b)(6) standard requires that the plaintiff provide "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A complaint must "contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005).

While notice pleading requirements are based on Rule 8, *see Twombly*, 550 U.S. at 555, claims for fraud are held to the heightened pleading standard of Rule 9(b). We held in *Omnicare I* that, although § 11 claims do not require pleading of scienter, Rule

9(b) pleading standards still apply to § 11 claims that sound in fraud. *Omnicare I*, 583 F.3d at 948. We furthermore held that the § 11 claims pleaded by Plaintiffs in the instant case met this requirement. *Id*.

Plaintiffs argue that, since this Court's decision in *Omnicare I*, they have amended their complaint to abandon all claims "that could be construed as alleging fraud or intentional or reckless misconduct" and that, as a result, Rule 9(b) no longer applies. They base this argument primarily on a disclaimer that has been added to the complaint stating: "Plaintiffs expressly exclude and disclaim any allegation that could be construed as alleging fraud or intentional or reckless misconduct, as this claim is based solely on the theories of strict liability and negligence under the Securities Act." This one-sentence disclaimer, however, does not achieve Plaintiffs' desired result. *See Cal. Pub. Emps. Ret. Sys. v. Chubb Corp.,* 394 F.3d 126, 160 (3rd Cir. 2004) ("[A]n examination of the factual allegations that support Plaintiffs' section 11 claims establishes that the claims are indisputably immersed in . . . fraud. The one-sentence disavowment of fraud contained [in] . . . the . . . [c]omplaint does not require us to infer" otherwise) (footnote omitted). The basis of Plaintiffs' allegations has not changed since *Omnicare I*, and therefore the heightened pleading standard of Rule 9(b) still applies to the § 11 claims.

Complaints subject to Rule 9(b) must plead "with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). In order to meet the "particularity" requirement of Rule 9(b), "a plaintiff [must] allege the time, place, and content of the alleged misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (internal quotation marks and citation omitted); *see also Omnicare I*, 583 F.3d at 942-43. "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

III.

Plaintiffs have brought two separate § 11 claims in their Third Amended Complaint: one for material misstatements and/or omissions of legal compliance and one for Defendants' alleged failure to comply with GAAP such that the Registration Statement contained material misstatements and/or omissions. We address each of these claims in turn.

A.

1.

Plaintiffs allege that Omnicare's statements of legal compliance led investors to believe that Omnicare—which was allegedly engaged in illegal activities—was in compliance with the law. Plaintiffs assert that these statements of legal compliance made in the Registration Statement were therefore material, untrue, and misleading, in violation of § 11.

The district court held that Plaintiffs were required to plead that Defendants knew that the statements of legal compliance were false at the time they were made. Because the court found that Plaintiffs failed to plead knowledge of falsity, it dismissed the complaint for failure to state a claim. On appeal, Plaintiffs argue that § 11 provides for strict liability and it was therefore inappropriate for the district court to require them to plead knowledge in connection with their § 11 claim. We agree.

Section 11 provides for the imposition of liability if a registration statement, as of its effective date, "contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a). It provides a remedy for investors who have acquired securities pursuant to a registration statement that was materially misleading or omitted material information. *See Herman & MacLean v. Huddleston*, 459 U.S. 375, 381-82 (1983). Section 11 provides for strict liability, and does not require a plaintiff to plead a defendant's state of mind. *See id.* at 382. Plaintiffs contend that the argument should end here and that the district court erred by requiring them to plead state of mind.

Defendants respond, however, that the issue is not so simple. Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, have elements parallel to § 11, prohibiting "fraudulent, material misstatements or omissions in connection with the sale or purchase of a security." *Miller v. Champion Enters. Inc.*, 346 F.3d 660, 671 (6th Cir. 2003) (internal quotation marks and citation omitted). This Court held in *Omnicare I*—for purposes of § 10(b) and Rule 10b-5—that legal compliance statements are "soft information." *See Omnicare I*, 583 F.3d at 945 (citation omitted). Soft information includes matters of opinion and predictions. There is no duty to disclose soft information unless it is "virtually as certain as hard facts." *In re Sofamor Danek Grp. Inc.*, 123 F.3d 394, 401-02 (6th Cir. 1997) (internal quotation marks and citations omitted). Because there is generally no duty to disclose soft information for purposes of § 10(b) and Rule 10b-5, a defendant corporation that chooses to keep *completely silent* regarding soft information cannot be held liable for a material omission under those provisions. *See id.*

A thornier issue arises when a defendant chooses to disclose some soft information, as occurred in the instant case. Defendants were not completely silent, but instead spoke on issues of legal compliance. With regard to § 10(b) and Rule 10b-5, this Court has reasoned:

> [T]he protections for soft information end where speech begins . . . . : [H]ow can a rule of non-disclosure apply to a company's disclosure? If—as defendants contend—the protection for soft information remains intact even after a company speaks on an emerging issue, the speaker could choose which contingencies to expose and which to conceal. On any subject falling short of reasonable certainty, then, a company could offer a patchwork of honesty and omission. This proposition is untenable . . . .

*Helwig v. Vencor, Inc.*, 251 F.3d 540, 560 (6th Cir. 2001) (en banc), *abrogated on other grounds by Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007).

In *Omnicare I*, this Court addressed Plaintiffs' § 10(b) and Rule 10b-5 claims regarding statements of legal compliance. The Court reasoned, citing *Kushner v. Beverly Enterprises, Inc.*, 317 F.3d 820, 831 (8th Cir. 2003), and *Helwig*, that Plaintiffs could not

stop at pleading that Defendants' disclosures were untruthful. *See Omnicare I*, 583 F.3d at 945. We held that in order for § 10(b) and Rule 10b-5 liability to attach to Omnicare's general assertions of legal compliance, the complaint must "adequately plead[] that the defendants knew the statements were untruthful" at the time they were made. *Id*. at 945 (internal quotation marks and citation omitted). The *Omnicare I* panel found that Plaintiffs had not adequately pleaded any allegation that Defendants knew that the legal compliance statements were false when made and accordingly held that Plaintiffs had failed to state a claim. *Id*. at 946-47.

The *Omnicare I* panel relied heavily on *Kushner*, which had in turn relied heavily on our *Helwig* and *Sofamor* opinions. *See Omnicare I*, 583 F.3d at 945 (citing *Kushner*, 317 F.3d at 831.). *Kushner* frames the knowledge of falsity pleading requirement as one of disclosure. *Kushner* does not appear to have distinguished between material misstatements and omissions under § 10b and Rule 10b-5. Although the primary issue in *Kushner* was whether defendants were liable for a material misstatement, the court began by commenting: "Before liability for non-disclosure can attach, the defendant must have violated an affirmative duty of disclosure." *Kushner*, 317 F.3d at 831 (internal quotation marks and citation omitted). Citing *Sofamor*, the court noted that there is generally no duty to disclose soft information. When knowledge of falsity is shown, however, "[o]pinions cease to be soft information" and become hard facts. *Id*. At that point, the duty to disclose and liability for disclosure of false information under § 10b and Rule 10b-5 attach. *See id*. Although the court agreed that "even absent a duty to speak, a party who voluntarily discloses material facts in connection with securities transactions assumes a duty to speak fully and truthfully," it held that "[a]bsent a clear allegation that the defendants knew of the scheme and its illegal nature at the time they stated the belief that the company was in compliance with the law, there [was] nothing further to disclose." *Id*. (internal quotation marks and citation omitted). According to *Kushner*, under § 10b and Rule 10b-5 a defendant may only be liable for a material misstatement if she knew the statements were false and therefore knew there was something further to disclose.

Language in *Helwig* supports the view taken by the Eighth Circuit in *Kushner* for purposes of § 10b and Rule 10b-5.  In *Helwig*, this Court stated: "With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis *as then known . . . .*"  251 F.3d at 561 (emphasis added).  In other words, a company that chooses to disclose soft information assumes the duty to do so fully and truthfully, but only to the extent that facts are known at the time the statements are made.  *Helwig*, *Kushner* and *Omnicare I*, therefore appear to indicate that, in § 10(b) and Rule 10b-5 cases, a plaintiff must plead knowledge of falsity because there can be no liability for a material misstatement if a defendant was not aware there was anything further to disclose in order to correct the misstatement.

Defendants now argue that the same reasoning should apply under § 11 to the case at hand.  We do not agree.  Section 10(b) and Rule 10b-5 require a plaintiff to prove scienter, § 11 is a strict liability statute.  It makes sense that a defendant cannot be liable for a fraudulent misstatement or omission under § 10(b) and Rule 10b-5 if he did not know a statement was false at the time it was made.  The statement cannot be fraudulent if the defendant did not know it was false.  Section § 11, however, provides for strict liability when a registration statement "contain[s] an untrue statement of a material fact." 15 U.S.C. 77k(a); *see Huddleston*, 459 U.S. at 382.  No matter the framing, once a false statement has been made, a defendant's knowledge is not relevant to a strict liability claim.

It is immaterial that this issue has been framed as a disclosure requirement.  Disclosed information can nevertheless be indisputably wrong.  Under the language of § 10(b) and Rule 10b-5, a defendant may take shelter in the fact that she did not know there was anything further to disclose; it was not *fraudulent* for the defendant to fail to disclose anything further.  A plaintiff therefore fails to state a claim if she has not pleaded knowledge of falsity.  Under § 11, however, if the defendant discloses information that includes a material misstatement, that is sufficient and a complaint may survive a motion to dismiss without pleading knowledge of falsity.

Finally, Defendants urge us to follow *Fait v. Regions Financial Corp.*, 655 F.3d 105 (2d Cir. 2011). In *Fait*, a case similar to the instant one, the Second Circuit held "when a plaintiff asserts a claim under section 11 . . . based upon a belief or opinion alleged to have been communicated by a defendant, liability lies only to the extent that the statement was both objectively false and disbelieved by the defendant at the time it was expressed." *Id.* at 110 (citing *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1095-96 (1991)). Defendants argue that in *Fait* the Second Circuit correctly interpreted and applied the Supreme Court opinion *Virginia Bankshares*, 501 U.S. 1083 (1991), and this Court is bound to follow suit. *See also Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1162 (9th Cir. 2009) (citing to *Virginia Bankshares* and holding that opinions can "give rise to a claim under section 11 only if the complaint alleges with particularity that the statements were both objectively and subjectively false or misleading").

While Defendants are correct that we are bound by Supreme Court precedent, we see nothing in *Virginia Bankshares* that alters the outcome in the instant case, and we decline to follow the Second and Ninth Circuits as a result. Reserving the question of whether scienter is necessary to make out a § 14(a) claim, the Supreme Court held in *Virginia Bankshares* that a plaintiff may bring a claim under § 14(a) of the Securities and Exchange Act of 1934 for a material misstatement or omission even if the statement is vague and conclusory. *Virginia Bankshares*, 501 U.S. at 1093 ("[S]uch conclusory terms in a commercial context are reasonably understood to rest on a factual basis that justifies them as accurate, the absence of which renders them misleading"); 15 U.S.C § 78n(a). The Court furthermore held that a defendant's disbelief in his own statement is not enough, on its own, for a plaintiff to make out a claim for a material misstatement under § 14(a). *Id.* at 1090, 1095-96. In other words, under § 14(a) a plaintiff is required to plead objective falsity in order to state a claim; pleading belief of falsity alone is not enough. *Id.* at 1095-96 ("proof of mere disbelief or belief undisclosed [standing alone] should not suffice for liability under § 14(a)"). In the instant case, the Plaintiffs have pleaded objective falsity. The *Virginia Bankshares* Court was not faced with and did not address whether a plaintiff must additionally plead knowledge of falsity in order to state a claim. *Id.* It therefore does not impact our decision today.

The Court, *at the same point* that it declined to discuss scienter, also explicitly limited its discussion to statements of opinion and belief that it presumed were made with knowledge of falsity: "[W]e interpret the jury verdict as finding that the directors' statements of belief and opinion were made with knowledge that the directors did not hold the beliefs or opinions expressed, and we confine our discussion to statements so made." *Id*. at 1090. A footnote to this sentence reserves "the question whether scienter [is] necessary for liability . . . under § 14(a)." *Id*. at 1090 n.5. The connection of these two statements indicates that the *Virginia Bankshares* Court itself tied the knowledge of falsity requirement to scienter but explicitly declined to address the issue further. Instead, it assumed the jury in the case had already found knowledge of falsity—whether necessary or not—and proceeded from there. *See id*. at 1090.

The Second and Ninth Circuits have read more into *Virginia Bankshares* than the language of the opinion allows and have stretched to extend this § 14(a) case into a § 11 context. Since the Supreme Court assumed knowledge of falsity for the purposes of the discussion in *Virginia Bankshares*, § 14(a) was effectively treated as a statute that required scienter.[3] The *Virginia Bankshares* discussion, therefore, has very limited application to § 11; a provision which the Court has already held to create strict liability. *See Huddleston*, 459 U.S. at 381-82.

The Second Circuit reads Justice Scalia's concurring opinion as support for their interpretation of *Virginia Bankshares*. *See Fait*, 655 F.3d at 111 (citing *Virginia Bankshares*, 501 U.S. at 1108-1109). Justice Scalia wrote: "As I understand the Court's opinion, the statement 'In the opinion of the Directors, this is a high value for the shares' would produce liability if in fact it was not a high value and the directors knew that. It would not produce liability if in fact it was not a high value but the directors honestly believed otherwise." *Virginia Bankshares*, 501 U.S. at 1108-09. We do not think it is necessary to ignore Justice Scalia's interpretation of the majority *Virginia Bankshares* opinion; we only believe it is unreasonable to extend it to this case and §11. Because the

---

[3]In this Circuit § 14(a) does in fact require proof of scienter to state a claim. *Adams v. Standard Knitting Mills, Inc*., 623 F.2d 422, 430 (6th Cir. 1980).

Court chose to limit its discussion to "statements of belief and opinion . . . made with knowledge that" the statements were false, *id*. at 1090, any musings regarding mens rea are dicta. The Supreme Court was not faced with the question of knowledge of falsity requirements. Justice Souter carefully declined to discuss strict liability in his introduction to the majority opinion, and it would be unwise for this Court to add an element to § 11 claims based on little more than a tea-leaf reading in a § 14(a) case. While there are contexts in which dicta provides valuable insight into the Court's outlook, we must be careful in how it is extended and applied. This is a context in which extension of dicta is most dangerous. Even Justice Scalia's seemingly direct statement must be read in the context of § 14(a)—a non-strict liability statute. In writing the opinion, the Court could not have intended that musings regarding the requirement would later be applied to an unrelated statute. We therefore refuse to extend *Virginia Bankshares* to impose a knowledge of falsity requirement upon § 11 claims.

2.

We construe facts alleged in the complaint in the light most favorable to the Plaintiffs and accept all factual allegations as true. *Kottmyer*, 436 F.3d at 688; *see, Tellabs, Inc, v. Makor Issues & Right, Ltd.*, 551 U.S. 308, 322 (2007). But complaints subject to Rule 9(b) must plead "with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Defendants argue that Plaintiffs have not met their burden under Rule 9(b) due to their reliance on *qui tam* complaints and confidential sources. We disagree.

Defendants first argue that Plaintiffs' citations to *qui tam* complaints are insufficient to sustain their claim. In order to support this argument, Defendants first contend that Plaintiffs have failed to conduct a "reasonable investigation" as required under Rule 11. *See Alrbright v. Upjohn Co.*, 788 F.2d 1217, 1220 (6th Cir. 1986); *see also* Fed. R. Civ. P. 11. This argument, however, was also raised in district court, and the court, at its discretion, did not issue sanctions or strike the relevant portions of the Third Amended Complaint. *See Mich. Div.-Monument Builders of N. Am.v. Mich. Cemetery Ass'n*, 524 F.3d 726, 739 (6th Cir. 2008) ("We review a district court's

decision to grant or deny sanctions . . . arising from . . . Rule 11, under the abuse-of-discretion standard"). Rule 11 sanctions are a question of "whether the . . . attorney's conduct was reasonable under the circumstances." *Id*. (internal quotation marks and citations omitted). We see no reason to conclude that the district court abused its discretion for purposes of Rule 11.

Defendants next argue that allegations based on *qui tam* complaints nevertheless cannot withstand a motion to dismiss under Rule 9(b). Defendants cite to several cases in which courts, after noting reliance on third-party actions, have dismissed complaints under Rule 9(b). We do not believe this case necessitates such action. The only Sixth Circuit opinion cited by Defendants, *Konkol v. Diebold, Inc.,* 590 F.3d 390 (6th Cir. 2009), *abrogated on other grounds by Frank v. Dana Corp.,* 646 F.3d 954 (6th Cir. 2011), is inapposite. In *Konkol*, this Court began by determining that the complaint, in a § 10b and Rule 10b-5 case, was insufficient to state a claim—on grounds that had nothing to do with third-party complaints.[4] *Id*. at 397-400. We then proceeded to address the plaintiffs' list of defenses to that holding, finding each of them insufficient. *Id*. at 400-04. One of these defenses was the existence of government investigations into the defendants' actions. *Id*. at 401-02. We stated that "[a]lthough a government investigation is not altogether irrelevant to the . . . analysis . . . [g]overnment investigations can result from any number of causes, and the investors have not pointed to any facts suggesting that the SEC investigation" supports their claim. *Id*. at 402.

The same is not true in the instant case. Plaintiffs do not simply cite to the *existence* of government investigations, they allege numerous reasons why the facts of those investigations support their claim. In *Konkol*, the plaintiffs relied on the fact that government agencies had dedicated resources to investigating defendants, and they therefore concluded, "as a matter of common sense," that something must be amiss. *Id*. at 401-02. The Plaintiffs here jump to no such conclusions. Instead of relying on the mere existence of *qui tam* complaints or investigations, they comprehensively discuss

---

[4]We also note that plaintiffs in *Konkol* were not only subject to Rule 9(b) but also to the higher more exacting pleading standards of the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b), which are inapplicable in this case. *Konkol*, 590 F.3d at 396.

how the details are relevant to their own complaint, and give extensive rationale for that support. We find the other cases cited by Defendants similarly inapplicable.

Defendants' second argument is that the confidential witness statements in the complaint should be "steeply discounted." *See Omnicare I*, 583 F.3d at 946 (discounting the weight of the confidential witness statements). Even giving the confidential witness statements minimal weight, however, we do not doubt that sufficient facts have been presented to "raise a reasonable expectation that discovery will reveal evidence." *Twombly*, 550 U.S. at 556. We therefore conclude that Plaintiffs have adequately met the particularity requirement of Rule 9(b).

B.

Plaintiffs also appeal the dismissal of their § 11 claim for GAAP-based misstatements and omissions. The district court held that Plaintiffs failed to plead knowledge of falsity and therefore failed to state a claim. Defendants argue that we should affirm because the GAAP allegations are based on "soft information." *Cf. In re Almost Family, Inc. Sec. Litig.*, No. 3:10-CV-00520-H, 2012 WL 443461, at *4 (W.D. Ky. Feb. 10, 2012) (holding that some GAAP allegations were soft information because the allegations in plaintiff's complaint focused on defendants' beliefs about accounting numbers, not on the actual data they reported). We disagree that Plaintiffs' GAAP allegations qualify as soft information. Plaintiffs' allegation is that Defendants' hard numbers were incorrect. These are allegations of hard facts and do not require pleading knowledge of falsity under any standard. Even if we were to hold that the GAAP allegations are soft information, however, plaintiffs are not required to plead knowledge of falsity under § 11 to make out a claim for a material misstatement. Therefore, the district court erred in requiring Plaintiffs to plead knowledge of falsity with regard to the GAAP violations.

However, Plaintiffs still have to meet the particularity requirements of Rule 9(b) in pleading that GAAP violations occurred. As this Court noted in *Omnicare I*, Plaintiffs' GAAP allegations appear to contain some factual holes. In assessing Plaintiffs' 10(b) and 10b-5 claims, the *Omnicare I* Court stated:

> Although Plaintiffs list numerous alleged violations of GAAP rules, the complaint nowhere suggests how or when any of these alleged accounting improprieties were disclosed. Rather, Plaintiffs argue that they were implicitly disclosed because Omnicare's allegedly illegal conduct (drug recycling, etc.) translated into accounting violations. Thus, when news of the government raids appeared, the accounting statements were thrown into question by extension. This causation theory, however, rests entirely on speculation and is substantially undercut both by the lack of any financial restatements on Omnicare's part and by the willingness of third-party auditors to continue to certify Omnicare's GAAP compliance.

*Omnicare I*, 583 F.3d at 945.

While that analysis concerned whether Plaintiffs had adequately alleged "loss causation" with particularity, it is applicable to whether they have pleaded a GAAP violation at all. Plaintiffs' Third Amended Complaint alleges many GAAP-based violations, but as the Court noted in *Omnicare I*, the details of the accounting violations remain unclear. Although Plaintiffs' complaint has been amended since our previous opinion, Plaintiffs have not pointed to any updated information that would resolve these issues.

## C.

Defendants urge us to affirm the district court on the alternative ground that the affirmative defense of loss causation is evident on the face of the complaint. "Loss causation" refers to the causal connection between the defendant's material misrepresentation or omission and the plaintiff's loss. *See Omnicare*, 527 F. Supp. 2d at 704-05. When an affirmative defense is evident on the face of a complaint, the complaint may be subject to dismissal under Rule 12(b)(6). *Jones v. Bock*, 549 U.S. 199, 215 (2007). Furthermore, this Court held in *Omnicare I* that the complaint did not adequately plead loss causation for the 10(b) and Rule 10b-5 claims. *Omnicare I*, 583 F.3d at 943-47.

Loss causation is an element of a § 10(b) and Rule 10b-5 claim but only an affirmative defense to a § 11 claim. The *Omnicare I* panel reversed the district court on

the § 11 claim on exactly that basis. Had the Court determined that the affirmative defense of loss causation was evident from the face of the pleadings, it would have affirmed and dismissed the case. Instead, it chose to remand to the district court for further analysis. *Id.* at 948. The district court, having declined to reach this issue on remand, has not yet addressed the merits of the argument. Although the complaint has been amended since *Omnicare I* was decided, the Defendants urge us to find loss causation on the basis of language in the outdated complaint. We therefore have no more information on this issue now than we had at the time of the *Omnicare I* opinion.

"When attention has been focused on other issues, or when the court from which a case comes has expressed no views on a controlling question, it may be appropriate to remand the case rather than deal with the merits of that question in this Court." *Dandridge v. Williams*, 397 U.S. 471, 476 n.6 (1970); *see also Lewis v. Philip Morris Inc.*, 355 F.3d 515, 534 (6th Cir. 2004) (remanding due to the fact-intensive nature of the review required). The district court in this case has had many years to familiarize itself with the facts of this case and is in a stronger position than this Court to conduct the fact-intensive analysis this ruling requires.

## IV.

For the foregoing reasons, we REVERSE the district court with regard to Defendants' legal compliance claims and REMAND for further proceedings consistent with this opinion; and AFFIRM with respect to Plaintiffs' GAAP-based claims.

---

**CONCURRENCE**

---

GWIN, District Judge, concurring.  I concur in the majority's thoughtful and comprehensive opinion.  I write separately to make clear that the district court retains the statutory and inherent discretion to resurrect previously dismissed claims and previously dismissed parties should later discovered evidence warrant it.  *See Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004) ("District courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment.").

Rule 54(b) of the Federal Rules of Civil Procedure provides the statutory vehicle for such revision.  If a court decides fewer than all the claims presented, as is the case here, dismissed claims can be revived until the entry of final judgment.  Fed. R. Civ. P. 54(b) ("[A]ny order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.").  The district court's ability to reconsider past rulings must be tempered by "the sound public policy that litigation be decided and then put to an end."  *Petition of U.S. Steel Corp.*, 479 F.2d 489, 494 (6th Cir. 1973).

In deciding whether to revisit previously dismissed claims or parties, a district court may consider "(1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice."  *Rodriguez*, 89 F. App'x at 959. (citing *Reich v. Hall Holding Co.*, 990 F. Supp. 955, 965 (N.D. Ohio 1998)).  Simple reargument of evidence that had been available at the time of the earlier decision is usually not enough to warrant reconsideration.  *Id*.

Rule 54(b) is particularly relevant in suits subject to the Private Securities Litigation Reform Act (PSLRA).  The PSLRA, passed in 1995 after considerable lobbying by corporate and investment interests, mandates heightened pleading

requirements to avoid dismissal.  As one scholar notes, the PSLRA "created a super-heightened pleading standard for certain aspects of securities claims and deferred discovery until after resolution of an inevitably protracted motion to dismiss . . . ." Arthur Miller, *From* Conley *to* Twombly *to* Iqbal:  *A Double Play on the Federal Rules of Civil Procedure*, 60 Duke L.J. 1, 11 (2010).  Such motions to dismiss, as is the case here, often include questions of "scienter, loss causation, reliance, and materiality—questions that formerly would have been considered trial worthy."  *Id.* Remarkably, the PSLRA imposes what amounts to a probabilistic pleading standard for scienter. *See Tellabs v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007) (defining the "strong inference" of scienter under the PSLRA as "more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent").

If newly-found evidence in a PSLRA case supports a previously dismissed claim's scienter (or materiality, or reliance, or loss causation) allegation, the district court could allow the claim to be revived.  District courts are charged with enforcing rules "to secure the just, speedy, and inexpensive determination" of an action.  Fed. R. Civ. P. 1.  There's a reason that "just" precedes "speedy."