NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0033n.06

No. 13-5461

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jan 15, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| FREDERICK SMITH, *et al.*, | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE MIDDLE |
| | ) | DISTRICT OF TENNESSEE |
| BAC HOME LOANS SERVICING, LP, *et al.*, | ) | |
| | ) | **OPINION** |
| Defendants-Appellees. | ) | |
| | ) | |
| | ) | |

BEFORE:  MOORE, COOK, Circuit Judges; GWIN, District Judge[*]

GWIN, District Judge. Appellants Frederick and Denise Smith appeal the district court's dismissal of this mortgage action. For the reasons that follow, we **AFFIRM**.

## I. BACKGROUND

On September 19, 2002, Appellants Frederick Smith and Denise Smith (collectively the "Smiths") entered into a loan transaction with Countrywide Home Loans, Inc. d.b.a. America's Wholesale Lender ("AWL") to buy a property located in Antioch, Tennessee.[1]

The Smiths executed a $64,000 promissory note and a deed of trust ("mortgage") related to the property.[2]

---

[*]The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

[1]R. 120-2 (Ex. 2 to Second Am. Compl) (Page ID # 443-55).

[2]R. 120-1 (Ex. 1 to Second Am. Compl.) (Page ID # 440-442); R. 120-2 (Ex. 2 to Second Am. Compl) (Page ID # 443-55).

The Smiths signed a promissory note that states that the borrowers understood "that the Lender may transfer this Note."[3] Additionally the mortgage states "[t]he Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. . . . There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note."[4]

Appellants' promissory note was sold and securitized. A loan servicer now services the promissory note.[5]

Despite the language of the promissory note and mortgage, the Smiths say they believed they would have a traditional lender/borrower relationship with a lender who would have an economic interest in their loan and have the full authority to amend, modify, or alter the terms of their loan if mutually agreeable.[6] Appellants also say they did not know the servicing relationship could be with a loan servicing company.[7]

On November 12, 2012, the Smiths filed their Second Amended Complaint against Countrywide Home Loans Inc. ("Countrywide"), Bank of America, N.A. ("BANA"), Federal National Mortgage Association ("Fannie Mae"), Mortgage Electronic Registration Systems, Inc. ("MERS"), and Wilson and Associates, PLLC ("W&A").[8]

---

[3]R. 120-1 (Ex. 1 to Second Am. Compl.) (Page ID # 441).

[4]R. 120-2 (Ex. 2 to Second Am. Compl) (Page ID # 452).

[5]R. 120 (Second Am. Compl.) (Page ID # 397).

[6]*Id.* (Page ID # 396).

[7]*Id.*

[8]*Id.* (Page ID # 392-439).

In their Second Amended Complaint, the Appellants made claims for (1) rescission–mistake–void agreement/contract reformation; (2) declaratory judgment/injunction and damages for defendants' lack of standing; (3) breach of contract for securitization; (4) fraud for collecting payments under false pretenses; (5) manipulation of securities and real estate markets causing frustration of Plaintiffs' performance; (6) quiet title; (7) breach of contract related to foreclosure; (8) fraud in the inducement; (9) violation of Tennessee Consumer Protection Act; (10) slander of title; (11) violation of the Fair Debt Collection Practices Act; and (12) civil conspiracy.[9]

On December 27, Appellees filed a joint motion to dismiss.[10] On March 18, 2013, the district court granted the Motion to Dismiss on the grounds that the note and mortgage did not give the Smiths a contractual right to negotiate for modification of their loan.[11]

On March 28, 2013, Appellants filed their Notice of Appeal.[12]

## II. Legal Standard

This Court reviews *de novo* a district court's grant of a motion to dismiss based on Federal Rule of Civil Procedure 12(b)(6).[13] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" [14] "The plausibility requirement is not a "probability requirement," but requires "more than a sheer

---

[9]*Id.*

[10]R. 136 (Motion to Dismiss) (Page ID # 1-24).

[11]R. 179 (Order) (Page ID #1297).

[12]R. 181 (Notice of Appeal) (Page ID # 1298-99).

[13]*Buck v. Thomas M. Cooley Law School*, 597 F.3d 812, 816 (6th Cir. 2010).

[14]*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

possibility that the defendant has acted unlawfully."[15] Federal Rule of Civil Procedure 8 provides the general standard of pleading and only requires that a complaint "contain ... a short plain statement of the claim showing that the pleader is entitled to relief."[16] "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."[17] In deciding a motion to dismiss under Rule 12(b)(6), "a court should assume the[ ] veracity" of "well-pleaded factual allegations."[18]

## III. Analysis

### A. Rescission/Reformation

The Smiths say that when they signed the promissory note and mortgage, they believed they were contracting with a party who would have authority to modify their loan.[19] Appellants say they never agreed to have their loan securitized or to have a loan servicing company involved.[20] Thus, the Smiths say there was no mutual assent or meeting of the minds and rescission of the loan or reformation of the contract to conform to their understanding is appropriate.

In order to reform a contract, a party must establish that the contract was executed under mutual mistake of fact or law regarding a basic assumption under the contract or a unilateral mistake

[15]*Id.*

[16]Fed. R. Civ. Pro. 8(a)(2).

[17] *Iqbal*, 556 U.S. at 678–79.

[18]*Id.*

[19]Appellants' Brief 19.

[20]*Id.* at 20.

of fact or law induced by the other party's fraudulent misrepresentation.[21]  Additionally, a contract may not be rescinded for mistake "unless the mistake is innocent, mutual, and material to the transaction and unless the complainant shows an injury."[22]  Here the Smiths do not plead that there was mutual mistake.

Therefore, the Smiths' only ground for contract reformation is a unilateral mistake of fact or law induced by the other party's fraud.  Here, the Smiths say they did not understand that their loan could be securitized or a loan servicer could become involved.  However, the documents they signed specifically say they agreed to the transfer of their loan and the role of the loan servicer.[23] "It is a bedrock principle of contract law that an individual who signs a contract is presumed to have read the contract and is bound by its contents."[24]  Therefore, Appellants are presumed to know their loan could be securitized and a loan servicer could be involved.

Further Appellants cannot make a showing that any fraudulent actions of the Appellees induced Appellants to enter the loan.  To show fraudulent inducement, Appellants must plead:

> (1) a false statement concerning a fact material to the transaction; (2) knowledge of the statement's falsity or utter disregard for its truth; (3) intent to induce reliance on the statement; (4) reliance under circumstances manifesting a reasonable right to rely on the statement; (5) an injury resulting from the reliance.[25]

---

[21]*Sikora v. Vanderploeg*, 212 S.W.3d 277, 286 (Tenn. Ct. App. 2006).

[22]*Pugh's Lawn Landscape Co. v. Jaycon Dev. Corp.*, 320 S.W.3d 252, 261 (Tenn. 2010).

[23]R. 120-1 (Ex. 1 to Second Am. Compl.) (Page ID # 441); R. 120-2 (Ex. 2 to Second Am. Compl) (Page ID # 452).

[24]*84 Lumber Co. v. Smith*, 356 S.W.3d 380, 383 (Tenn. 2011).

[25]*Lamb v. MegaFlight, Inc.*, 26 S.W.3d 627, 630 (Tenn. Ct. App. 2000).

Rule 9 of the Federal Rules of Civil Procedure further requires that the party state "with particularity the circumstances constituting fraud or mistake."[26]

Here the Smiths do not identify any false statements made by the Appellees. Appellants merely state that the loan documents "led them to believe they would always have a traditional lender/borrower relationship" and they did not know that they could end up with a loan servicer.[27] However, neither the promissory note nor the mortgage mentioned there would be a traditional lender/borrower relationship, and the possible use of a loan servicer was disclosed to the Appellants.[28]

Consequently, it seems Appellants really try to plead fraudulent non-disclosure. A duty of disclosure exists in Tennessee:

> where there is a previous definite fiduciary relationship between the parties; where it appears one or each of the parties to the contract expressly reposes a trust and confidence in the other; or where the contract or transaction is intrinsically fiduciary and calls for perfect good faith such as a contract of insurance which is an example of this last class.[29]

None of these relationships or circumstances exist here. Appellants plead no previous confidential relationship; the contract was not one where trust or confidence was expressly reposed; and there was nothing intrinsically fiduciary in the contract.[30] Appellees were not obligated to explain loans or loan servicing to Appellants, and rescission or reformation is not warranted.

---

[26]Fed. R. Civ. P. 9(b).

[27]R. 120 (Second Am. Compl.) (Page ID # 396).

[28]R. 120-1 (Ex. 1 to Second Am. Compl.) (Page ID # 440-442); R. 120-2 (Ex. 2 to Second Am. Compl) (Page ID # 443-55).

[29]*Homestead Grp., LLC v. Bank of Tenn.*, 307 S.W.3d 746, 752 (Tenn. Ct. App. 2009).

[30]*See Wright v. C & S Family Credit, Inc.*, 01A01-9709-CH-00470, 1998 WL 195954 (Tenn. Ct. App. Apr. 24, 1998) (stating that "the debtor/creditor relationship does not constitute a fiduciary relationship).

**B. Breach of Contract**

For two reasons, the Smiths say Appellees breached their contract. First, they say the transfer of the loan to a loan servicer amounted to a breach of contract because it "erased" their enforceable contractual right to the possibility of loan modification.[31] Second, they say the securitization amounted to a breach of contract because it left them with no entity with which to negotiate a loan modification, involved insurance arrangements without an insurable interest, and left them at risk of multiple collection actions on the Note.[32]

In order to state a claim for breach of contract, Appellants must show "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract."[33]

**1. Contractual Right to Loan Modification**

The Smiths' first basis for their breach of contract fails because neither the promissory note nor the mortgage gave them an enforceable, contractual right to negotiate a loan modification. Appellants do not identify any promissory note provision or mortgage provision that arguably shows the contrary. In fact, the word modification appears only twice in the mortgage. First, it appears to clarify that the lender is entitled to "repayment of the Loan, and all renewals, extensions and modifications of the Note."[34] Second, the mortgage explains that "[e]xtension of the time for

---

[31]Appellants' Brief at 16-18.

[32]*Id.* at 36-37.

[33]*ARC LifeMed, Inc. v. AMC-Tenn., Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005).

[34]R. 120-2 (Ex. 2 to Second Am. Compl.) (Page ID # 445).

payment or modification of amortization of the sums secured by this Security Instrument" does not effect the lender's or its successors' right to continue to enforce the mortgage against the borrowers.[35] Neither provision has anything to do with granting the Appellants a contractual right to modification, and therefore, Appellants cannot show any breach of contract on this basis.

## 2. Securitization of the Loan

The Smiths' breach of contract claim also fails because they cannot show the loan or mortgage prohibited the securitization of the loan. Appellants fail to identify any provision of the contract that prohibits securitization or the involvement of a loan servicer.[36] Rather, the contract specifically states that the loan could be transferred and that a loan servicer could become involved.[37] Thus the securitization of the loan did not breach the contract.

## C. Fraudulent Modification

The Smiths say that Appellees have a fraudulent modification program whereby they pretend to offer the possibility of loan modification while they simultaneously pursue or threaten to foreclose against homeowners.[38] Specifically, the Smiths say they were encouraged to go into default and then BANA denied their loan application and attempted to foreclose upon the Property.[39] They also say they tried to obtain a payoff statement but were unable to do so.[40]

---

[35]*Id.* (Page ID # 451).

[36] R. 120-1 (Ex. 1 to Second Am. Compl.) (Page ID # 440-442); R. 120-2 (Ex. 2 to Second Am. Compl) (Page ID # 443-55).

[37]*Id.*

[38]Appellants' Brief at 32.

[39]*Id.* at 32.

[40]*Id.*

The elements of fraud or misrepresentation in Tennessee are: (1) an intentional misrepresentation of a material fact, (2) knowledge of the representation's falsity, and (3) an injury caused by reasonable reliance on the representation; and (4) the requirement that the misrepresentation involve a past or existing fact.[41]  Rule 9 of the Federal Rules of Civil Procedure additionally requires that the party state "with particularity the circumstances constituting fraud or mistake."[42]

The Smiths do not state a plausible claim of fraud or misrepresentation.  Appellants merely say that Appellees had a "fraudulent modification program" without stating any actual misrepresentation made to them.[43]  Moreover, the Appellants fail to plead fraud with particularity as required by Rule 9.  They do not state who made the misrepresentation or the time, place, and content of the misrepresentation.[44]  For these reasons, Appellants' claim for fraud based on a fraudulent modification program fails.

**D. Declaratory Judgment Based on Lack of Authority to Foreclose**

The Smiths say that the promissory note and mortgage were never properly assigned to BANA to entitle it to foreclose because MERS had no authority to assign the promissory note or

---

[41]*Dobbs v. Guenther*, 846 S.W.2d 270, 274 (Tenn. Ct. App. 1992).

[42]Fed. R. Civ. P. 9(b).

[43]Appellants' Brief at 31-33.

[44]*See Indiana State Dist. Council of Laborers & HOD Carriers Pension & Welfare Fund v. Omnicare, Inc.*, 719 F.3d 498, 503 (6th Cir. 2013).

mortgage.[45]  Appellants also say that BANA has produced no documentation demonstrating its authority to foreclose upon the property.[46]

Assuming that Appellants had standing to challenge the assignment under Tennessee law, MERS has authority under the mortgage to assign it to BANA.  The mortgage specifically states that MERS is "[t]he beneficiary of this Security Instrument" and the "nominee for Lender and Lender's successors and assigns."[47]  This language grants MERS the power to act as the agent of the note holder and assign the mortgage.[48]  Therefore, because MERS had authority to assign the mortgage to BANA, BANA as owner of the mortgage had authority to foreclose.

**E. Remaining Claims**

In their brief, Appellants simply state they plead several other causes of action in their Complaint, including fraud for collecting mortgage payments under false pretenses (Count 4), manipulating securities and real estate markets causing frustration of performance (Count 5), quiet title (Count 6), breach of contract related to foreclosure (Count 7), fraud in the inducement (Count 8), violation of Tennessee Consumer Protection Act (Count 9), slander of title (Count 10), violation of the FDCPA (Count 11), and civil conspiracy (Count 12).[49]  Because they offer no argument as to how those causes of action succeed, Appellants have abandoned their appeal as to those claims.[50]

---

[45]Appellants' Brief at 24-31.

[46]*Id.* at 31, 33-34.

[47]R. 120-2 (Ex. 2 to Second Am. Compl.) (Page ID # 443-455).

[48]*See Hutchens v. Bank of Am. N.A.*, 3:11-CV-624, 2012 WL 1618316 (E.D. Tenn. May 9, 2012); *Samples v. Bank of Am.*, N.A., 3:12-CV-44, 2012 WL 1309135 (E.D. Tenn. Apr. 16, 2012).

[49]Appellants' Brief 37-38.

[50]*See Post v. Bradshaw*, 621 F.3d 406, 413 (6th Cir. 2010) (holding Appellant "failed to brief claim [], thus abandoning it"); *United States v. Johnson*, 440 F.3d 832, 845-46 (6th Cir. 2006) (holding an "appellant abandons all issues not raised and argued in its initial brief on appeal); *Kirk v. Simpson*, 977 F.2d 581 (6th Cir. 1992) (stating that

No. 13-5461
*Smith v. BAC Home Loan Servicing, L.P.*

## IV. Conclusion

For the foregoing reasons, we **AFFIRM**.

---

Appellant abandoned claim because no argument on that claim was included in his appellate brief).