(Slip Opinion) OCTOBER TERM, 2014 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## OMNICARE, INC., ET AL. *v.* LABORERS DISTRICT COUNCIL CONSTRUCTION INDUSTRY PENSION FUND ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

No. 13–435.   Argued November 3, 2014—Decided March 24, 2015

The Securities Act of 1933 requires that a company wishing to issue securities must first file a registration statement containing specified information about the issuing company and the securities offered. See 15 U. S. C. §§77g, 77aa.  The registration statement may also include other representations of fact or opinion.  To protect investors and promote compliance with these disclosure requirements, §11 of the Act creates two ways to hold issuers liable for a registration statement's contents: A purchaser of securities may sue an issuer if the registration statement either "contain[s] an untrue statement of a material fact" or "omit[s] to state a material fact . . . necessary to make the statements therein not misleading."  §77k(a).  In either case, the buyer need not prove that the issuer acted with any intent to deceive or defraud.  *Herman & MacLean* v. *Huddleston*, 459 U. S. 375, 381–382.

  Petitioner Omnicare, a pharmacy services company, filed a registration statement in connection with a public offering of common stock.  In addition to the required disclosures, the registration statement contained two statements expressing the company's opinion that it was in compliance with federal and state laws.  After the Federal Government filed suit against Omnicare for allegedly receiving kickbacks from pharmaceutical manufacturers, respondents, pension funds that purchased Omnicare stock (hereinafter Funds), sued Omnicare under §11.  They claimed that Omnicare's legal-compliance statements constituted "untrue statement[s] of . . . material fact" and that Omnicare "omitted to state [material] facts necessary" to make those statements not misleading.

The District Court granted Omnicare's motion to dismiss. Because the Funds had not alleged that Omnicare's officers knew they were violating the law, the court found that the Funds had failed to state a §11 claim. The Sixth Circuit reversed. Acknowledging that the statements at issue expressed opinions, the court held that no showing of subjective disbelief was required. In the court's view, the Funds' allegations that Omnicare's legal-compliance opinions were objectively false sufficed to support their claim.

Held:

   1. A statement of opinion does not constitute an "untrue statement of . . . fact" simply because the stated opinion ultimately proves incorrect. The Sixth Circuit's contrary holding wrongly conflates facts and opinions. A statement of fact expresses certainty about a thing, whereas a statement of opinion conveys only an uncertain view as to that thing. Section 11 incorporates that distinction in its first clause by exposing issuers to liability only for "untrue statement[s] of . . . *fact.*" §77k(a) (emphasis added). Because a statement of opinion admits the possibility of error, such a statement remains true—and thus is not an "untrue statement of . . . fact"—even if the opinion turns out to have been wrong.

   But opinion statements are not wholly immune from liability under §11's first clause. Every such statement explicitly affirms one fact: that the speaker actually holds the stated belief. A statement of opinion thus qualifies as an "untrue statement of . . . fact" if *that fact* is untrue—*i.e.,* if the opinion expressed was not sincerely held. In addition, opinion statements can give rise to false-statement liability under §11 if they contain embedded statements of untrue facts. Here, however, Omnicare's sincerity is not contested and the statements at issue are pure opinion statements. The Funds thus cannot establish liability under §11's first clause. Pp. 6–10.

   2. If a registration statement omits material facts about the issuer's inquiry into, or knowledge concerning, a statement of opinion, and if those facts conflict with what a reasonable investor, reading the statement fairly and in context, would take from the statement itself, then §11's omissions clause creates liability. Pp. 10–20.

      (a) For purposes of §11's omissions clause, whether a statement is "misleading" is an objective inquiry that depends on a reasonable investor's perspective. Cf. *TSC Industries, Inc.* v. *Northway, Inc.*, 426 U. S. 438, 445. Omnicare goes too far by claiming that no reasonable person, in any context, can understand a statement of opinion to convey anything more than the speaker's own mindset. A reasonable investor may, depending on the circumstances, understand an opinion statement to convey facts about the speaker's basis for holding that view. Specifically, an issuer's statement of opinion may fairly imply

Syllabus

facts about the inquiry the issuer conducted or the knowledge it had. And if the real facts are otherwise, but not provided, the opinion statement will mislead by omission.

An opinion statement, however, is not misleading simply because the issuer knows, but fails to disclose, some fact cutting the other way. A reasonable investor does not expect that every fact known to an issuer supports its opinion statement. Moreover, whether an omission makes an expression of opinion misleading always depends on context. Reasonable investors understand opinion statements in light of the surrounding text, and §11 creates liability only for the omission of material facts that cannot be squared with a fair reading of the registration statement as a whole. Omnicare's arguments to the contrary are unavailing. Pp. 10–19.

(b) Because neither court below considered the Funds' omissions theory under the right standard, this case is remanded for a determination of whether the Funds have stated a viable omissions claim. On remand, the court must review the Funds' complaint to determine whether it adequately alleges that Omnicare omitted from the registration statement some specific fact that would have been material to a reasonable investor. If so, the court must decide whether the alleged omission rendered Omnicare's opinion statements misleading in context. Pp. 19–20.

719 F. 3d 498, vacated and remanded.

KAGAN, J., delivered the opinion of the Court, in which ROBERTS, C. J., and KENNEDY, GINSBURG, BREYER, ALITO, and SOTOMAYOR, JJ., joined. SCALIA, J., filed an opinion concurring in part and concurring in the judgment. THOMAS, J., filed an opinion concurring in the judgment.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

_____

No. 13–435

_____

## OMNICARE, INC., ET AL., PETITIONERS *v.* LABORERS DISTRICT COUNCIL CONSTRUCTION INDUSTRY PENSION FUND ET AL.

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

[March 24, 2015]

JUSTICE KAGAN delivered the opinion of the Court.

Before a company may sell securities in interstate commerce, it must file a registration statement with the Securities and Exchange Commission (SEC). If that document either "contain[s] an untrue statement of a material fact" or "omit[s] to state a material fact . . . necessary to make the statements therein not misleading," a purchaser of the stock may sue for damages. 15 U. S. C. §77k(a). This case requires us to decide how each of those phrases applies to statements of opinion.

I

The Securities Act of 1933, 48 Stat. 74, 15 U. S. C. §77a *et seq.*, protects investors by ensuring that companies issuing securities (known as "issuers") make a "full and fair disclosure of information" relevant to a public offering. *Pinter* v. *Dahl*, 486 U. S. 622, 646 (1988). The linchpin of the Act is its registration requirement. With limited exceptions not relevant here, an issuer may offer securities to the public only after filing a registration statement. See §§77d, 77e. That statement must contain specified

information about both the company itself and the security for sale. See §§77g, 77aa. Beyond those required disclosures, the issuer may include additional representations of either fact or opinion.

Section 11 of the Act promotes compliance with these disclosure provisions by giving purchasers a right of action against an issuer or designated individuals (directors, partners, underwriters, and so forth) for material misstatements or omissions in registration statements. As relevant here, that section provides:

> "In case any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading, any person acquiring such security . . . [may] sue." §77k(a).

Section 11 thus creates two ways to hold issuers liable for the contents of a registration statement—one focusing on what the statement says and the other on what it leaves out. Either way, the buyer need not prove (as he must to establish certain other securities offenses) that the defendant acted with any intent to deceive or defraud. *Herman & MacLean* v. *Huddleston*, 459 U. S. 375, 381–382 (1983).

This case arises out of a registration statement that petitioner Omnicare filed in connection with a public offering of common stock. Omnicare is the nation's largest provider of pharmacy services for residents of nursing homes. Its registration statement contained (along with all mandated disclosures) analysis of the effects of various federal and state laws on its business model, including its acceptance of rebates from pharmaceutical manufacturers. See, *e.g.,* App. 88–107, 132–140, 154–166. Of significance here, two sentences in the registration statement expressed Omnicare's view of its compliance with legal

requirements:

- "We believe our contract arrangements with other healthcare providers, our pharmaceutical suppliers and our pharmacy practices are in compliance with applicable federal and state laws." *Id.,* at 95.

- "We believe that our contracts with pharmaceutical manufacturers are legally and economically valid arrangements that bring value to the healthcare system and the patients that we serve." *Id.,* at 137.

Accompanying those legal opinions were some caveats. On the same page as the first statement above, Omnicare mentioned several state-initiated "enforcement actions against pharmaceutical manufacturers" for offering payments to pharmacies that dispensed their products; it then cautioned that the laws relating to that practice might "be interpreted in the future in a manner inconsistent with our interpretation and application." *Id.,* at 96. And adjacent to the second statement, Omnicare noted that the Federal Government had expressed "significant concerns" about some manufacturers' rebates to pharmacies and warned that business might suffer "if these price concessions were no longer provided." *Id.,* at 136–137.

Respondents here, pension funds that purchased Omnicare stock in the public offering (hereinafter Funds), brought suit alleging that the company's two opinion statements about legal compliance give rise to liability under §11. Citing lawsuits that the Federal Government later pressed against Omnicare, the Funds' complaint maintained that the company's receipt of payments from drug manufacturers violated anti-kickback laws. See *id.,* at 181–186, 203–226. Accordingly, the complaint asserted, Omnicare made "materially false" representations about legal compliance. *Id.,* at 274. And so too, the complaint continued, the company "omitted to state [material] facts necessary" to make its representations not misleading.

*Id.,* at 273. The Funds claimed that none of Omnicare's officers and directors "possessed reasonable grounds" for thinking that the opinions offered were truthful and complete. *Id.,* at 274. Indeed, the complaint noted that one of Omnicare's attorneys had warned that a particular contract "carrie[d] a heightened risk" of liability under anti-kickback laws. *Id.,* at 225 (emphasis deleted). At the same time, the Funds made clear that in light of §11's strict liability standard, they chose to "exclude and disclaim any allegation that could be construed as alleging fraud or intentional or reckless misconduct." *Id.,* at 273.

The District Court granted Omnicare's motion to dismiss. See Civ. No. 2006–26 (ED Ky., Feb. 13, 2012), App. to Pet. for Cert. 28a, 38a–40a, 2012 WL 462551, \*4–\*5. In the court's view, "statements regarding a company's belief as to its legal compliance are considered 'soft' information" and are actionable only if those who made them "knew [they] were untrue at the time." App. to Pet. for Cert. 38a. The court concluded that the Funds' complaint failed to meet that standard because it nowhere claimed that "the company's officers knew they were violating the law." *Id.,* at 39a. The Court of Appeals for the Sixth Circuit reversed. See 719 F. 3d 498 (2013). It acknowledged that the two statements highlighted in the Funds' complaint expressed Omnicare's "opinion" of legal compliance, rather than "hard facts." *Id.,* at 504 (quoting *In re Sofamor Danek Group Inc.*, 123 F. 3d 394, 401–402 (CA6 1997)). But even so, the court held, the Funds had to allege only that the stated belief was "objectively false"; they did not need to contend that anyone at Omnicare "disbelieved [the opinion] at the time it was expressed." 719 F. 3d*,* at 506 (quoting *Fait* v. *Regions Financial Corp.*, 655 F. 3d 105, 110 (CA2 2011)).

We granted certiorari, 571 U. S. ___ (2014), to consider how §11 pertains to statements of opinion. We do so in two steps, corresponding to the two parts of §11 and the

two theories in the Funds' complaint.  We initially address
the Funds' claim that Omnicare made "untrue state-
ment[s] of . . . material fact" in offering its views on legal
compliance.  §77k(a); see App. 273–274.  We then take up
the Funds' argument that Omnicare "omitted to state a
material fact . . . necessary to make the statements [in its
registration filing] not misleading."  §77k(a); see App.
273–274.  Unlike both courts below, we see those allega-
tions as presenting different issues.[1]  In resolving the first,
we discuss when an opinion itself constitutes a factual
misstatement.  In analyzing the second, we address when
an opinion may be rendered misleading by the omission of
discrete factual representations.  Because we find that the
Court of Appeals applied the wrong standard, we vacate
its decision.

------

[1] In his concurrence, JUSTICE THOMAS contends that the lower courts'
erroneous conflation of these two questions should limit the scope of our
review: We should say nothing about omissions, he maintains, because
that issue was not pressed or passed on below.  We disagree.  Although
the Funds could have written a clearer complaint, they raised a discrete
omissions claim.  See, *e.g.,* App. 191 ("[T]he Company's 2005 Registra-
tion Statement . . . omitted material information that was . . . necessary
to make the Registration Statement not misleading"); *id.*, at 273 ("The
Registration Statement . . . omitted to state facts necessary to make the
statements made not misleading, and failed to adequately disclose
material facts as described above").  The lower courts chose not to
address that claim separately, but understood that the complaint
alleged not only misstatements but also omissions.  See App. to Pet. for
Cert. 38a (describing the Funds' claims as relating to "misstate-
ments/omissions" and dismissing the lot as "not actionable"); 719 F. 3d,
at 501 (giving a single rationale for reversing the District Court's
dismissal of the Funds' claims "for material misstatements and omis-
sions").  And the omissions issue was the crux of the parties' dispute
before this Court.  The question was fully briefed by both parties (plus
the Solicitor General), and omissions played a starring role at oral
argument.  Neither in its briefs nor at argument did Omnicare ever
object that the Funds' omissions theory had been forfeited or was not
properly before this Court.  We therefore see no reason to ignore the
issue.

## II

The Sixth Circuit held, and the Funds now urge, that a statement of opinion that is ultimately found incorrect— even if believed at the time made—may count as an "untrue statement of a material fact." 15 U. S. C §77k(a); see 719 F. 3d, at 505; Brief for Respondents 20–26. As the Funds put the point, a statement of belief may make an implicit assertion about the belief's "subject matter": To say "we believe X is true" is often to indicate that "X is in fact true." *Id.,* at 23; see Tr. of Oral Arg. 36. In just that way, the Funds conclude, an issuer's statement that "we believe we are following the law" conveys that "we in fact are following the law"—which is "materially false," no matter what the issuer thinks, if instead it is violating an anti-kickback statute. Brief for Respondents 1.

But that argument wrongly conflates facts and opinions. A fact is "a thing done or existing" or "[a]n actual happening." Webster's New International Dictionary 782 (1927). An opinion is "a belief[,] a view," or a "sentiment which the mind forms of persons or things." *Id.,* at 1509. Most important, a statement of fact ("the coffee is hot") expresses certainty about a thing, whereas a statement of opinion ("I think the coffee is hot") does not. See *ibid.* ("An opinion, in ordinary usage . . . does not imply . . . definiteness . . . or certainty"); 7 Oxford English Dictionary 151 (1933) (an opinion "rests[s] on grounds insufficient for complete demonstration"). Indeed, that difference between the two is so ingrained in our everyday ways of speaking and thinking as to make resort to old dictionaries seem a mite silly. And Congress effectively incorporated just that distinction in §11's first part by exposing issuers to liability not for "untrue statement[s]" full stop (which would have included ones of opinion), but only for "untrue statement[s] of . . . *fact.*" §77k(a) (emphasis added).

Consider that statutory phrase's application to two hypothetical statements, couched in ways the Funds claim

are equivalent. A company's CEO states: "The TVs we manufacture have the highest resolution available on the market." Or, alternatively, the CEO transforms that factual statement into one of opinion: "I *believe*" (or "I think") "the TVs we manufacture have the highest resolution available on the market." The first version would be an untrue statement of fact if a competitor had introduced a higher resolution TV a month before—even assuming the CEO had not yet learned of the new product. The CEO's assertion, after all, is not mere puffery, but a determinate, verifiable statement about her company's TVs; and the CEO, however innocently, got the facts wrong. But in the same set of circumstances, the second version would remain true. Just as she said, the CEO really did believe, when she made the statement, that her company's TVs had the sharpest picture around. And although a plaintiff could later prove that opinion erroneous, the words "I believe" themselves admitted that possibility, thus precluding liability for an untrue statement of fact. That remains the case if the CEO's opinion, as here, concerned legal compliance. If, for example, she said, "I believe our marketing practices are lawful," and actually did think that, she could not be liable for a false statement of fact—even if she afterward discovered a longtime violation of law. Once again, the statement would have been true, because all she expressed was a view, not a certainty, about legal compliance.

That still leaves some room for §11's false-statement provision to apply to expressions of opinion. As even Omnicare acknowledges, every such statement explicitly affirms one fact: that the speaker actually holds the stated belief. See Brief for Petitioners 15–16; W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on the Law of Torts §109, p. 755 (5th ed. 1984) (Prosser and Keeton) ("[A]n expression of opinion is itself always a statement of . . . the fact of the belief, the existing state of

mind, of the one who asserts it"). For that reason, the CEO's statement about product quality ("I believe our TVs have the highest resolution available on the market") would be an untrue statement of fact—namely, the fact of her own belief—if she knew that her company's TVs only placed second. And so too the statement about legal compliance ("I believe our marketing practices are lawful") would falsely describe her own state of mind if she thought her company was breaking the law. In such cases, §11's first part would subject the issuer to liability (assuming the misrepresentation were material).[2]

In addition, some sentences that begin with opinion words like "I believe" contain embedded statements of fact—as, once again, Omnicare recognizes. See Reply Brief 6. Suppose the CEO in our running hypothetical said: "I believe our TVs have the highest resolution available because we use a patented technology to which our competitors do not have access." That statement may be read to affirm not only the speaker's state of mind, as

———————

[2] Our decision in *Virginia Bankshares, Inc.* v. *Sandberg*, 501 U. S. 1083 (1991), qualifies this statement in one respect. There, the Court considered when corporate directors' statements of opinion in a proxy solicitation give rise to liability under §14(a) of the Securities Exchange Act, 15 U. S. C. §78n(a), which bars conduct similar to that described in §11. In discussing that issue, the Court raised the hypothetical possibility that a director could think he was lying while actually (*i.e.,* accidentally) telling the truth about the matter addressed in his opinion. See *Virginia Bankshares*, 501 U. S., at 1095–1096. That rare set of facts, the Court decided, would not lead to liability under §14(a). See *ibid.* The Court reasoned that such an inadvertently correct assessment is unlikely to cause anyone harm and that imposing liability merely for the "impurities" of a director's "unclean heart" might provoke vexatious litigation. *Id.,* at 1096 (quoting *Stedman* v. *Storer*, 308 F. Supp. 881, 887 (SDNY 1969)). We think the same is true (to the extent this scenario ever occurs in real life) under §11. So if our CEO did not believe that her company's TVs had the highest resolution on the market, but (surprise!) they really did, §11 would not impose liability for her statement.

described above, but also an underlying fact: that the company uses a patented technology. See *Virginia Bankshares, Inc.* v. *Sandberg*, 501 U. S. 1083, 1109 (1991) (SCALIA, J., concurring in part and concurring in judgment) (showing that a statement can sometimes be "most fairly read as affirming separately both the fact of the [speaker's] opinion and the accuracy of the facts" given to support or explain it (emphasis deleted)). Accordingly, liability under §11's false-statement provision would follow (once again, assuming materiality) not only if the speaker did not hold the belief she professed but also if the supporting fact she supplied were untrue.

But the Funds cannot avail themselves of either of those ways of demonstrating liability. The two sentences to which the Funds object are pure statements of opinion: To simplify their content only a bit, Omnicare said in each that "we believe we are obeying the law." And the Funds do not contest that Omnicare's opinion was honestly held. Recall that their complaint explicitly "exclude[s] and disclaim[s]" any allegation sounding in fraud or deception. App. 273. What the Funds instead claim is that Omnicare's belief turned out to be wrong—that whatever the company thought, it was in fact violating anti-kickback laws. But that allegation alone will not give rise to liability under §11's first clause because, as we have shown, a sincere statement of pure opinion is not an "untrue statement of material fact," regardless whether an investor can ultimately prove the belief wrong. That clause, limited as it is to factual statements, does not allow investors to second-guess inherently subjective and uncertain assessments. In other words, the provision is not, as the Court of Appeals and the Funds would have it, an invitation to Monday morning quarterback an issuer's opinions.

### III
### A

That conclusion, however, does not end this case because the Funds also rely on §11's omissions provision, alleging that Omnicare "omitted to state facts necessary" to make its opinion on legal compliance "not misleading." App. 273; see §77k(a).[3] As all parties accept, whether a statement is "misleading" depends on the perspective of a reasonable investor: The inquiry (like the one into materiality) is objective. Cf. *TSC Industries, Inc.* v. *Northway, Inc.*, 426 U. S. 438, 445 (1976) (noting that the securities laws care only about the "significance of an omitted or misrepresented fact to a reasonable investor"). We therefore must consider when, if ever, the omission of a fact can make a statement of opinion like Omnicare's, even if literally accurate, misleading to an ordinary investor.

Omnicare claims that is just not possible. On its view, no reasonable person, in any context, can understand a pure statement of opinion to convey anything more than the speaker's own mindset. See Reply Brief 5–6. As long as an opinion is sincerely held, Omnicare argues, it cannot mislead as to any matter, regardless what related facts the speaker has omitted. Such statements of belief (concludes Omnicare) are thus immune from liability under §11's second part, just as they are under its first.[4]

---

[3] Section 11's omissions clause also applies when an issuer fails to make mandated disclosures—those "required to be stated"—in a registration statement. §77k(a). But the Funds do not object to Omnicare's filing on that score.

[4] In a different argument that arrives at the same conclusion, Omnicare maintains that §11, by its terms, bars only those omissions that make statements of *fact*—not opinion—misleading. See Reply Brief 3–5. The language of the omissions clause, however, is not so limited. It asks whether an omitted fact is necessary to make "statements" in "any part of the registration statement" not misleading; unlike in §11's first clause, here the word "statements" is unmodified, thus including both fact and opinion. In any event, Omnicare's alternative interpretation

That claim has more than a kernel of truth. A reasonable person understands, and takes into account, the difference we have discussed above between a statement of fact and one of opinion. See *supra,* at 6–7. She recognizes the import of words like "I think" or "I believe," and grasps that they convey some lack of certainty as to the statement's content. See, *e.g.,* Restatement (Second) of Contracts §168, Comment *a*, p. 456 (1979) (noting that a statement of opinion "implies that [the speaker] . . . is not certain enough of what he says" to do without the qualifying language). And that may be especially so when the phrases appear in a registration statement, which the reasonable investor expects has been carefully word-smithed to comply with the law. When reading such a document, the investor thus distinguishes between the sentences "we believe X is true" and "X is true." And because she does so, the omission of a fact that merely rebuts the latter statement fails to render the former misleading. In other words, a statement of opinion is not misleading just because external facts show the opinion to be incorrect. Reasonable investors do not understand such statements as guarantees, and §11's omissions clause therefore does not treat them that way.

But Omnicare takes its point too far, because a reasonable investor may, depending on the circumstances, understand an opinion statement to convey facts about how the speaker has formed the opinion—or, otherwise put, about the speaker's basis for holding that view. And if the real facts are otherwise, but not provided, the opinion statement will mislead its audience. Consider an unadorned

––––––––––

succeeds merely in rephrasing the critical issue. Omnicare recognizes that every opinion statement is also a factual statement about the speaker's own belief. See *supra,* at 7–8. On Omnicare's view, the question thus becomes when, if ever, an omission can make a statement of *that fact* misleading to an ordinary investor. The following analysis applies just as well to that reformulation.

statement of opinion about legal compliance: "We believe our conduct is lawful."  If the issuer makes that statement without having consulted a lawyer, it could be misleadingly incomplete.  In the context of the securities market, an investor, though recognizing that legal opinions can prove wrong in the end, still likely expects such an assertion to rest on some meaningful legal inquiry—rather than, say, on mere intuition, however sincere.[5]   Similarly, if the issuer made the statement in the face of its lawyers' contrary advice, or with knowledge that the Federal Government was taking the opposite view, the investor again has cause to complain: He expects not just that the issuer believes the opinion (however irrationally), but that it fairly aligns with the information in the issuer's possession at the time.[6]  Thus, if a registration statement omits material facts about the issuer's inquiry into or knowledge concerning a statement of opinion, and if those facts conflict with what a reasonable investor would take from the statement itself, then §11's omissions clause creates liability.[7]

—————

[5] In some circumstances, however, reliance on advice from regulators or consistent industry practice might accord with a reasonable investor's expectations.

[6] The hypothetical used earlier could demonstrate the same points.  Suppose the CEO, in claiming that her company's TV had the highest resolution available on the market, had failed to review any of her competitors' product specifications.  Or suppose she had recently received information from industry analysts indicating that a new product had surpassed her company's on this metric.  The CEO may still honestly believe in her TV's superiority.  But under §11's omissions provision, that subjective belief, in the absence of the expected inquiry or in the face of known contradictory evidence, would not insulate her from liability.

[7] Omnicare contends at length that *Virginia Bankshares* forecloses this result, see Brief for Petitioners 16–21, relying on the following sentence: "A statement of belief may be open to objection . . . solely as a misstatement of the psychological fact of the speaker's belief in what he says," 501 U. S., at 1095.  But Omnicare's argument plucks that state-

An opinion statement, however, is not necessarily misleading when an issuer knows, but fails to disclose, some fact cutting the other way.  Reasonable investors understand that opinions sometimes rest on a weighing of competing facts; indeed, the presence of such facts is one reason why an issuer may frame a statement as an opinion, thus conveying uncertainty.  See *supra,* at 6–7, 11. Suppose, for example, that in stating an opinion about legal compliance, the issuer did not disclose that a single junior attorney expressed doubts about a practice's legality, when six of his more senior colleagues gave a stamp of approval.  That omission would not make the statement of opinion misleading, even if the minority position ultimately proved correct: A reasonable investor does not expect that *every* fact known to an issuer supports its opinion statement.[8]

_____

ment from its context and thereby transforms its meaning.  *Virginia Bankshares* concerned an expression of opinion that the speaker did not honestly hold—*i.e.,* one making an "untrue statement of fact" about the speaker's own state of mind, §77k(a).  See *id.*, at 1090 ("[W]e interpret the jury verdict as finding that the . . . directors did not hold the beliefs or opinions expressed, and we confine our discussion to statements so made").  The Court held that such a statement gives rise to liability under §14(a) when it is also "false or misleading about its subject matter."  *Id.,* at 1096.  Having done so, the Court went on to consider the rare hypothetical case, described in this opinion's second footnote, in which a speaker expresses an opinion that she does not actually hold, but that turns out to be right.  See *supra*, at 8, n. 2.  The sentence Omnicare cites did no more than introduce that hypothetical; it was a way of saying "someone might object to a statement—even when the opinion it expressed proved correct—solely on the ground that it was disbelieved."  And the Court then held, as noted above, that such an objection would fail.  See *ibid.*  The language thus provides no support for Omnicare's argument here.

[8]We note, too, that a reasonable investor generally considers the specificity of an opinion statement in making inferences about its basis. Compare two new statements from our ever-voluble CEO.  In the first, she says: "I believe we have 1.3 million TVs in our warehouse."  In the second, she says: "I believe we have enough supply on hand to meet

Moreover, whether an omission makes an expression of opinion misleading always depends on context. Registration statements as a class are formal documents, filed with the SEC as a legal prerequisite for selling securities to the public. Investors do not, and are right not to, expect opinions contained in those statements to reflect baseless, off-the-cuff judgments, of the kind that an individual might communicate in daily life. At the same time, an investor reads each statement within such a document, whether of fact or of opinion, in light of all its surrounding text, including hedges, disclaimers, and apparently conflicting information. And the investor takes into account the customs and practices of the relevant industry. So an omission that renders misleading a statement of opinion when viewed in a vacuum may not do so once that statement is considered, as is appropriate, in a broader frame. The reasonable investor understands a statement of opinion in its full context, and §11 creates liability only for the omission of material facts that cannot be squared with such a fair reading.

These principles are not unique to §11: They inhere, too, in much common law respecting the tort of misrepresentation.[9] The Restatement of Torts, for example, recognizes that "[a] statement of opinion as to facts not disclosed and not otherwise known to the recipient may" in some circumstances reasonably "be interpreted by him as an implied statement" that the speaker "knows facts sufficient to justify him in forming" the opinion, or that he at least

———————

demand." All else equal, a reasonable person would think that a more detailed investigation lay behind the former statement.

[9] Section 11 is, of course, "not coextensive with common-law doctrines of fraud"; in particular, it establishes "a stringent standard of liability," not dependent on proof of intent to defraud. *Herman & MacLean* v. *Huddleston*, 459 U. S. 375, 381, 388–389 (1983); see *supra,* at 2; *infra*, at 15, n. 11. But we may still look to the common law for its insights into how a reasonable person understands statements of opinion.

knows no facts "incompatible with [the] opinion." Restatement (Second) of Torts §539, p. 85 (1976).[10] When that is so, the Restatement explains, liability may result from omission of facts—for example, the fact that the speaker failed to conduct any investigation—that rebut the recipient's predictable inference. See *id.,* Comment *a*, at 86; *id.,* Comment *b*, at 87. Similarly, the leading treatise in the area explains that "it has been recognized very often that the expression of an opinion may carry with it an implied assertion, not only that the speaker knows no facts which would preclude such an opinion, but that he does know facts which justify it." Prosser and Keeton §109, at 760. That is especially (and traditionally) the case, the treatise continues, where—as in a registration statement—a speaker "holds himself out or is understood as having special knowledge of the matter which is not available to the plaintiff." *Id.,* at 760–761 (footnote omitted); see Restatement (Second) of Torts §539, Comment *b*, at 86 (noting that omissions relating to an opinion's basis are "particularly" likely to give rise to liability when the speaker has "special knowledge of facts unknown to the recipient"); *Smith* v. *Land and House Property Corp.,* [1884] 28 Ch. D. 7, 15 (App. Cas.) (appeal taken from Eng.) (opinion of Bowen, L. J.) (When "the facts are not equally known to both sides, then a statement of opinion by the one who knows the facts best . . . impliedly states that [the speaker] knows facts which justify his opinion").[11]

––––––––

[10] The Restatement of Contracts, discussing misrepresentations that can void an agreement, says much the same: "[T]he recipient of an assertion of a person's opinion as to facts not disclosed" may sometimes "properly interpret it as an assertion (a) that the facts known to that person are not incompatible with his opinion, or (b) that he knows facts sufficient to justify him in forming it." Restatement (Second) of Contracts §168, p. 455 (1979).

[11] In invoking these principles, we disagree with JUSTICE SCALIA's common-law-based opinion in two crucial ways. First, we view the common law's emphasis on special knowledge and expertise as support-

And the purpose of §11 supports this understanding of how the omissions clause maps onto opinion statements. Congress adopted §11 to ensure that issuers "tell[ ] the whole truth" to investors.  H. R. Rep. No. 85, 73d Cong., 1st Sess., 2 (1933) (quoting President Roosevelt's message to Congress).  For that reason, literal accuracy is not enough: An issuer must as well desist from misleading investors by saying one thing and holding back another. Omnicare would nullify that statutory requirement for all sentences starting with the phrases "we believe" or "we think."  But those magic words can preface nearly any conclusion, and the resulting statements, as we have shown, remain perfectly capable of misleading investors. See *supra,* at 11–12.  Thus, Omnicare's view would punch a hole in the statute for half-truths in the form of opinion statements.  And the difficulty of showing that such statements are literally false—which requires proving an issuer did not believe them, see *supra,* at 7–8—would make that opening yet more consequential: Were Omnicare right, companies would have virtual *carte blanche* to assert opinions in registration statements free from worry

———————

ing, rather than contradicting, our view of what issuers' opinion statements fairly imply.  That is because an issuer has special knowledge of its business—including the legal issues the company faces—not available to an ordinary investor.  Second, we think JUSTICE SCALIA's reliance on the common law's requirement of an intent to deceive is inconsistent with §11's standard of liability.  As we understand him, JUSTICE SCALIA would limit liability for omissions under §11 to cases in which a speaker "subjectively intend[s] the deception" arising from the omission, on the ground that the common law did the same.  *Post*, at 6 (opinion concurring in part and concurring in judgment) (emphasis deleted). But §11 discards the common law's intent requirement, making omissions unlawful—regardless of the issuer's state of mind—so long as they render statements misleading.  See *Herman & MacLean*, 459 U. S., at 382 (emphasizing that §11 imposes liability "even for innocent" misstatements or omissions).  The common law can help illuminate when an omission has that effect, but cannot change §11's insistence on strict liability.  See *supra,* at 14, n. 9.

about §11. That outcome would ill-fit Congress's decision to establish a strict liability offense promoting "full and fair disclosure" of material information. *Pinter*, 486 U. S., at 646; see *supra,* at 1–2.

Omnicare argues, in response, that applying §11's omissions clause in the way we have described would have "adverse policy consequences." Reply Brief 17 (capitalization omitted). According to Omnicare, any inquiry into the issuer's basis for holding an opinion is "hopelessly amorphous," threatening "unpredictable" and possibly "massive" liability. *Id.,* at 2; Brief for Petitioners 34, 36. And because that is so, Omnicare claims, many issuers will choose not to disclose opinions at all, thus "depriving [investors] of potentially helpful information." Reply Brief 19; see Tr. of Oral Arg. 59–61.

But first, that claim is, just as Omnicare labels it, one of "policy"; and Congress gets to make policy, not the courts. The decision Congress made, for the reasons we have indicated, was to extend §11 liability to all statements rendered misleading by omission. In doing so, Congress no doubt made §11 less cut-and-dry than a law prohibiting only false factual statements. Section 11's omissions clause, as applied to statements of both opinion and fact, necessarily brings the reasonable person into the analysis, and asks what she would naturally understand a statement to convey beyond its literal meaning. And for expressions of opinion, that means considering the foundation she would expect an issuer to have before making the statement. See *supra,* at 11–12. All that, however, is a feature, not a bug, of the omissions provision.

Moreover, Omnicare way overstates both the looseness of the inquiry Congress has mandated and the breadth of liability that approach threatens. As we have explained, an investor cannot state a claim by alleging only that an opinion was wrong; the complaint must as well call into question the issuer's basis for offering the opinion. See

*supra,* at 11–12. And to do so, the investor cannot just say that the issuer failed to reveal its basis. Section 11's omissions clause, after all, is not a general disclosure requirement; it affords a cause of action only when an issuer's failure to include a material fact has rendered a published statement misleading. To press such a claim, an investor must allege that kind of omission—and not merely by means of conclusory assertions. See *Ashcroft* v. *Iqbal*, 556 U. S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). To be specific: The investor must identify particular (and material) facts going to the basis for the issuer's opinion—facts about the inquiry the issuer did or did not conduct or the knowledge it did or did not have—whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context. See *supra,* at 11–14. That is no small task for an investor.

Nor does the inquiry such a complaint triggers ask anything unusual of courts. Numerous legal rules hinge on what a reasonable person would think or expect. In requiring courts to view statements of opinion from an ordinary investor's perspective, §11's omissions clause demands nothing more complicated or unmanageable. Indeed, courts have for decades engaged in just that inquiry, with no apparent trouble, in applying the common law of misrepresentation. See *supra,* at 14–15.

Finally, we see no reason to think that liability for misleading opinions will chill disclosures useful to investors. Nothing indicates that §11's application to misleading factual assertions in registration statements has caused such a problem. And likewise, common-law doctrines of opinion liability have not, so far as anyone knows, deterred merchants in ordinary commercial transactions from asserting helpful opinions about their products. That absence of fallout is unsurprising. Sellers (whether of

stock or other items) have strong economic incentives to
. . . well, *sell* (*i.e.,* hawk or peddle). Those market-based
forces push back against any inclination to underdisclose.
And to avoid exposure for omissions under §11, an issuer
need only divulge an opinion's basis, or else make clear the
real tentativeness of its belief. Such ways of conveying
opinions so that they do not mislead will keep valuable
information flowing. And that is the only kind of infor-
mation investors need. To the extent our decision today
chills *misleading* opinions, that is all to the good: In enact-
ing §11, Congress worked to ensure better, not just more,
information.

B

Our analysis on this score counsels in favor of sending
the case back to the lower courts for decision. Neither
court below considered the Funds' omissions theory with
the right standard in mind—or indeed, even recognized
the distinct statutory questions that theory raises. See
*supra,* at 4–5. We therefore follow our ordinary practice of
remanding for a determination of whether the Funds have
stated a viable omissions claim (or, if not, whether they
should have a chance to replead).

In doing so, however, we reemphasize a few crucial
points pertinent to the inquiry on remand. Initially, as we
have said, the Funds cannot proceed without identifying
one or more facts left out of Omnicare's registration
statement. See *supra,* at 17–18. The Funds' recitation of
the statutory language—that Omnicare "omitted to state
facts necessary to make the statements made not mislead-
ing"—is not sufficient; neither is the Funds' conclusory
allegation that Omnicare lacked "reasonable grounds for
the belief" it stated respecting legal compliance. App.
273–274. At oral argument, however, the Funds high-
lighted another, more specific allegation in their com-
plaint: that an attorney had warned Omnicare that a

particular contract "carrie[d] a heightened risk" of legal exposure under anti-kickback laws. *Id.*, at 225 (emphasis omitted); see Tr. of Oral Arg. 42, 49; *supra,* at 4. On remand, the court must review the Funds' complaint to determine whether it adequately alleged that Omnicare had omitted that (purported) fact, or any other like it, from the registration statement. And if so, the court must determine whether the omitted fact would have been material to a reasonable investor—*i.e.,* whether "there is a substantial likelihood that a reasonable [investor] would consider it important." *TSC Industries*, 426 U. S., at 449.

Assuming the Funds clear those hurdles, the court must ask whether the alleged omission rendered Omnicare's legal compliance opinions misleading in the way described earlier—*i.e.,* because the excluded fact shows that Omnicare lacked the basis for making those statements that a reasonable investor would expect. See *supra,* at 11–12. Insofar as the omitted fact at issue is the attorney's warning, that inquiry entails consideration of such matters as the attorney's status and expertise and other legal information available to Omnicare at the time. See *supra,* at 13. Further, the analysis of whether Omnicare's opinion is misleading must address the statement's context. See *supra,* at 14. That means the court must take account of whatever facts Omnicare *did* provide about legal compliance, as well as any other hedges, disclaimers, or qualifications it included in its registration statement. The court should consider, for example, the information Omnicare offered that States had initiated enforcement actions against drug manufacturers for giving rebates to pharmacies, that the Federal Government had expressed concerns about the practice, and that the relevant laws "could "be interpreted in the future in a manner" that would harm Omnicare's business. See App. 95–96, 136–137; *supra,* at 3.

Opinion of the Court

\*    \*    \*

With these instructions and for the reasons stated, we vacate the judgment below and remand the case for further proceedings.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

No. 13–435

OMNICARE, INC., ET AL., PETITIONERS *v.* LABORERS
DISTRICT COUNCIL CONSTRUCTION INDUSTRY
PENSION FUND ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SIXTH CIRCUIT

[March 24, 2015]

JUSTICE SCALIA, concurring in part and concurring in
the judgment.

Section 11 of the Securities Act of 1933 imposes liability
where a registration statement "contain[s] an untrue
statement of a material fact" or "omit[s] to state a material
fact necessary to make the statements therein not mis-
leading." 15 U. S. C. §77k(a). I agree with the Court's
discussion of what it means for an expression of opinion to
state an untrue material fact. But an expression of opin-
ion implies facts (beyond the fact that the speaker believes
his opinion) only where a reasonable listener would un-
derstand it to do so. And it is only when expressions of
opinion *do* imply these other facts that they can be "mis-
leading" without the addition of other "material facts."
The Court's view would count far more expressions of
opinion to convey collateral facts than I—or the common
law—would, and I therefore concur only in part.

The common law recognized that most listeners hear "I
believe," "in my estimation," and other related phrases as
*disclaiming* the assertion of a fact. Hence the (somewhat
overbroad) common-law rule that a plaintiff cannot estab-
lish a misrepresentation claim "for misstatements of
opinion, as distinguished from those of fact." W. Keeton,
D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on

Torts §109, p. 755 (5th ed. 1984) (Prosser & Keeton). A fraudulent misrepresentation claim based on an expression of opinion could lie for the one fact the opinion reliably conveyed: that the speaker in fact held the stated opinion. Restatement of Torts §525, Comment *c*, p. 60 (1938). And, in some circumstances, the common law acknowledged that an expression of opinion reasonably implied "that the maker knows of no fact incompatible with his opinion." *Id.* §539(1), at 91. The no-facts-incompatible-with-the-opinion standard was a demanding one; it meant that a speaker's judgment had to "var[y] so far from the truth that no reasonable man in his position could have such an opinion." Restatement of Contracts §474(b), p. 902, and Comment *b* (1932). But without more, a listener could only reasonably interpret expressions of opinion as conveying this limited assurance of a speaker's understanding of facts.

In a few areas, the common law recognized the possibility that a listener could reasonably infer from an expression of opinion not only (1) that the speaker sincerely held it, and (2) that the speaker knew of no facts incompatible with the opinion, but also (3) that the speaker had a reasonable basis for holding the opinion. This exceptional recognition occurred only where it was "very reasonable or probable" that a listener should place special confidence in a speaker's opinion. Prosser & Keeton §109, at 760–761. This included two main categories, both of which were carve-outs from the general rule that "the ordinary man has a reasonable competence to form his own opinion," and "is not justified in relying [on] the . . . opinion" of another. Restatement of Torts §542, Comment *a*, at 95. First, expressions of opinion made in the context of a relationship of trust, such as between doctors and patients. Second, expressions of opinion made by an expert in his capacity as an expert (for example, a jeweler's statement of opinion about the value of a diamond). These exceptions

allowed a listener to deal with those special expressions of opinion as though they were facts. As the leading treatise put it, "the ordinary man is free to deal in reliance upon the opinion of an expert jeweler as to the value of a diamond [or] of an attorney upon a point of law." Prosser & Keeton §109, at 761. But what reasonable person would assume that a lawyer's assessment of a diamond or a jeweler's opinion on a point of law implied an educated investigation?

The Court's expansive application of §11's omissions clause to expressions of opinion produces a far broader field of misrepresentation; in fact, it produces almost the opposite of the common-law rule. The Court holds that a reasonable investor is right to expect a reasonable basis for *all* opinions in registration statements—for example, the conduct of a "meaningful . . . inquiry,"—unless that is sufficiently disclaimed. *Ante,* at 12, 14–15, 18–20. Take the Court's hypothetical opinion regarding legal compliance. When a disclosure statement says "we believe our conduct is lawful," *ante,* at 12, the Court thinks this should be understood to suggest that a lawyer was consulted, since a reasonable investigation on this point would require consulting a lawyer. But this approach is incompatible with the common law, which had no "legal opinions are different" exception. See Restatement of Torts §545, at 102.

It is also incompatible with common sense. It seems to me strange to suggest that a statement of opinion as generic as "we believe our conduct is lawful" conveys the implied assertion of fact "we have conducted a meaningful legal investigation before espousing this opinion." It is strange to ignore the reality that a director might rely on industry practice, prior experience, or advice from regulators—rather than a meaningful legal investigation—in concluding the firm's conduct is lawful. The effect of the Court's rule is to adopt a presumption of expertise on all

topics volunteered within a registration statement.

It is reasonable enough to adopt such a presumption for those matters that are required to be set forth in a registration statement. Those are matters on which the management of a corporation *are* experts. If, for example, the registration statement said "we believe that the corporation has $5,000,000 cash on hand," or "we believe the corporation has 7,500 shares of common stock outstanding," the public is entitled to assume that the management has done the necessary research, so that the asserted "belief" is undoubtedly correct. But of course a registration statement would never preface such items, within the expertise of the management, with a "we believe that." Full compliance with the law, however, is another matter. It is not specifically required to be set forth in the statement, and when management prefaces *that* volunteered information with a "we believe that," it flags the fact that this is not within our area of expertise, but we think we are in compliance.

Moreover, even if one assumes that a corporation issuing a registration statement is (by operation of law) an "expert" with regard to all matters stated or opined about, I would still not agree with the Court's disposition. The Court says the following:

> "Section 11's omissions clause, as applied to statements of both opinion and fact, necessarily brings the reasonable person into the analysis, and asks what she would naturally understand a statement to convey beyond its literal meaning. And for expressions of opinion, that means considering the foundation *she would expect an issuer to have* before making the statement." *Ante*, at 17 (emphasis added).

The first sentence is true enough—but "what she [the reasonable (female) person, and even he, the reasonable (male) person] would naturally understand a statement [of opinion] to convey" is not that the statement has the foun-

dation *she* (the reasonable female person) considers adequate. *She* is not an expert, and is relying on the advice of an expert—who ought to know how much "foundation" is needed. She would naturally understand that the expert has conducted an investigation that *he* (or she or it) considered adequate. That is what relying upon the opinion of an expert means.

The common law understood this distinction. An action for fraudulent misrepresentation based on an opinion of an expert* was only allowed *when the expression of the opinion conveyed a fact*—the "fact" that summarized the expert's knowledge. Prosser and Keeton §109, at 761. And a fact was actionable only if the speaker *knew* it was false, if he *knew* he did not know it, or if he *knew* the listener would understand the statement to have a basis *that the speaker knew was not true.* Restatement of Torts §526, at 63–64. Ah!, the majority might say, so a speaker is liable for knowing he lacks *the listener's reasonable basis!* If the speaker *knows*—is actually aware—that the listener will understand an expression of opinion to have a specific basis that it does not have, then *of course* he satisfies this element of the tort.

But more often, when any basis is implied at all, both sides will understand that the speaker implied a "reasonable basis," but honestly disagree on what that means. And the common law supplied a solution for this: A speaker was liable for ambiguous statements—misunderstandings—as

---

*At the time of the Act's passage, the common law did not permit suit for negligent misrepresentation under the circumstances here. An action for negligent misrepresentation resting upon a statement of opinion would lie only if the opinion—a professional opinion—was "given upon facts equally well known to both the supplier and the recipient." Restatement of Torts §552, Comment *b*, at 123 (1938). That is of course not the situation here. The typical opinion "given upon facts equally known to both the supplier and the recipient" is a lawyer's legal advice on facts described by his client.

fraudulent misrepresentations *only* where he both knew of the ambiguity *and* intended that the listener fall prey to it. *Id.* §527, at 66.  In other words, even assuming both parties *knew* (a prerequisite to liability) that the expression of opinion implied a "reasonable investigation," if the speaker and listener honestly disagreed on the nature of that investigation, the speaker was not liable for a fraudulent misrepresentation unless *he subjectively intended* the deception. And so in no circumstance would the listener's belief of a "reasonable basis" control: If the speaker subjectively believes he lacks a reasonable basis, then his statement is simply a knowing misrepresentation.  *Id.* §526(a), at 63.  If he does not know of the ambiguity, or knows of it, but does not intend to deceive, he is not liable.  *Id.* §527, at 66.  That his basis for belief was "objectively unreasonable" does not impart liability, so long as the belief was genuine.

This aligns with common sense.  When a client receives advice from his lawyer, it is surely implicit in that advice that the lawyer has conducted a reasonable investigation—reasonable, that is, *in the lawyer's estimation.*  The client is relying on the expert lawyer's judgment for the amount of investigation necessary, no less than for the legal conclusion.  To be sure, if the lawyer conducts an investigation that he does not believe is adequate, he would be liable for misrepresentation.  And if he conducts an investigation that he believes is adequate but is *objectively unreasonable* (and reaches an incorrect result), he may be liable for malpractice.  But on the latter premise he is not liable for misrepresentation; all that was implicit in his advice was that he had conducted an investigation *he* deemed adequate.  To rely on an expert's opinion is to rely on the expert's evaluation of *how much time to spend* on the question at hand.

The objective test proposed by the Court—inconsistent with the common law and common intuitions about statements of opinion—invites roundabout attacks upon ex-

pressions of opinion. Litigants seeking recompense for a corporation's expression of belief that turned out, after the fact, to be incorrect can always charge that even though the belief rested upon an investigation the corporation thought to be adequate, the investigation was not "objectively adequate."

Nor is this objective test justified by §11's absence of a *mens rea* requirement, as the Court suggests. *Ante,* at 15 n.10. Some of my citation of the common law is meant to illustrate *when* a statement of opinion contains an implied warranty of reasonable basis. But when it does so, the question then becomes *whose* reasonable basis. My illustration of the common-law requirements for misrepresentation is meant to show that a typical listener assumes that *the speaker's* reasonable basis controls. That showing is not contradicted by §11's absence of a *mens rea* requirement.

Not to worry, says the Court. Sellers of securities need "only divulge an opinion's basis, or else make clear the real tentativeness of [their] belief[s]." *Ante,* at 18. One wonders what the function of "in my estimation" is, then, except as divulging such hesitation. Or what would be sufficient for the Court. "In my highly tentative estimation?" "In my estimation that, consistent with *Omnicare,* should be understood as an opinion only?" Reasonable speakers do not speak this way, and reasonable listeners do not receive opinions this way. When an expert expresses an opinion instead of stating a fact, it implies (1) that he genuinely believes the opinion, (2) that he believes his basis for the opinion is sufficient, and (most important) (3) that he is not certain of his result. Nothing more. This approach would have given lower courts and investors far more guidance and would largely have avoided the Funds' attack upon Omnicare's opinions as though Omnicare held those opinions out to be facts.

I therefore concur only in part and in the judgment.

# SUPREME COURT OF THE UNITED STATES

———————

No. 13–435

———————

## OMNICARE, INC., ET AL., PETITIONERS *v.* LABORERS DISTRICT COUNCIL CONSTRUCTION INDUSTRY PENSION FUND ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SIXTH CIRCUIT

[March 24, 2015]

JUSTICE THOMAS, concurring in the judgment.

I agree with the Court that the statements of opinion at issue in this case do not contain an untrue statement of a material fact. 15 U. S. C. §77k(a); *ante,* at 6–9. I write separately because I do not think it advisable to opine, as the majority does, on an additional theory of liability that is not properly before us.

The question whether and under what circumstances an omission may make a statement of opinion misleading is one that we should have left to the lower courts to decide on remand. As the majority acknowledges, that question was never passed on below. See *ante,* at 19. With good reason: Apart from a few conclusory allegations in their complaint and some *pro forma* references to "misleading statements and omissions" in their briefs, respondents did not elaborate on the omissions theory of liability before either the District Court or the Court of Appeals. They certainly did not articulate the theory the majority now adopts until they filed their merits brief before this Court. And it was not until oral argument that they identified a factual allegation in their complaint that *might* serve to state a claim under that theory. See *ante,* at 19–20. This delay is unsurprising given that, although various Courts of Appeals have discussed the theory, they have been

reluctant to commit to it. See *MHC Mut. Conversion Fund, L. P.* v. *Sandler O'Neill & Partners, L. P.*, 761 F. 3d 1109, 1116 (CA10 2014) ("[I]t is difficult to find many [courts] actually holding a security issuer liable on this basis, . . . and . . . the approach has been questioned by others on various grounds"); see also *ibid.*, n. 5.

We should exercise the same caution. This Court rarely prides itself on being a pioneer of novel legal claims, as "[o]urs is a court of final review and not first view." *Zivotofsky* v. *Clinton*, 566 U. S. ___, ___ (2012) (slip op., at 12) (internal quotation marks omitted). Thus, as a general rule, "we do not decide in the first instance issues not decided below." *Ibid.* (internal quotation marks omitted). This includes fashioning innovative theories of liability as much as it includes applying those theories to the circumstances of the case.

The Court has previously relied on a lower court's failure to address an issue below as a reason for declining to address it here, even when the question was fairly presented in the petition and fully vetted by other lower courts. See, *e.g., CSX Transp., Inc.* v. *Alabama Dept. of Revenue*, 562 U. S. 277, 284, n. 5 (2011); see also *id.,* at 303, n. 3 (THOMAS, J., dissenting). Surely the feature that distinguishes this case—a novel legal theory that is not fairly included in the question presented—counsels more strongly in favor of avoidance.

As JUSTICE SCALIA's concurrence reveals, the scope of this theory of liability is far from certain. And the highly fact-intensive nature of the omissions theory provides an additional reason not to address it at this time. The majority acknowledges that the facts a reasonable investor may infer from a statement of opinion depend on the context. And yet it opines about certain facts an investor may infer from an issuer's legal compliance opinion: that such an opinion is based on legal advice, for example, or that it is not contradicted by the Federal Government.

THOMAS, J., concurring in judgment

See *ante,* at 12. These inferences may seem sensible enough in a vacuum, but lower courts would do well to heed the majority's admonition that every statement of opinion must be considered "in a broader frame," *ante,* at 14, taking into account all the facts of the statement and its context. Would that the majority had waited for the "broader frame" of an actual case before weighing in on the omissions theory.