

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

---

### NO. PD-0436-22

---

**IJAH IWASEY BALTIMORE, Appellant**

**v.**

**THE STATE OF TEXAS**

---

**ON STATE'S PETITION FOR DISCRETIONARY REVIEW
FROM THE TENTH COURT OF APPEALS
MCLENNAN COUNTY**

---

**KEEL, J., filed a dissenting opinion in which KELLER, P.J., joined.**

### <u>DISSENTING OPINION</u>

Was it rational for the jury to conclude that a bar's "premises" included an adjacent parking lot? Yes. The jury was presented with photos of the scene and testimony from witnesses from which it could reasonably infer that the bar had direct or indirect control over the lot. The majority instead holds that the evidence was insufficient because the witnesses did not explain the bases for their opinions. In

reaching its decision, the majority makes an unwarranted assumption, misapplies our precedent, and encroaches on the role of the jury.

## I.   Unwarranted Assumption

The majority assumes that the witnesses offered opinions when they testified about the premises of the bar.   But the distinction between fact and opinion "is, at best, one of degree[.]"   *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 168 (1988).   One could say, "All statements in language are statements of opinion, i.e., statements of mental processes or perceptions."   *Id.* (quoting W. King & D. Phillinger, Opinion Evidence in Illinois 4 (1942)).   If that is so, and if the majority is right about opinions needing support to meet legal-sufficiency review, then witness testimony would always be legally insufficient because all their statements would be opinions and so would the bases for their opinions. The majority does not grapple with this implication.   Instead, it declares some statements—but not others—to be opinions but offers no principled basis for doing so.

For example, Detective Williams was asked, among other things, 1) if the Crying Shame was an establishment in McLennan County, 2) if it was licensed by the Texas Alcoholic Beverage Commission to sell alcohol, and 3) if the parking lot was part of the premises of the Crying Shame.   He answered "yes" or "that's correct" to each question. The majority says the last answer was an opinion.   Were the other two?   Why or why not?   The majority doesn't say.   Instead, it assumes that witness testimony about the premises was merely opinion and downgrades it as evidence.   The witnesses, however, did not couch their statements as opinions; they testified with certainty.   Maybe they

weren't opinions at all.   *See Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 183 (2015) (saying, "A statement of fact…expresses certainty about a thing, whereas a statement of opinion…does not.").   But even assuming that their statements were opinions, the majority's analysis is still flawed.

## II.   Majority Misapplies Caselaw

The majority claims that several of our cases hold that unsupported opinion testimony will not support a guilty verdict.   But it relies on cases where the testimony about an element was definitively contradicted, uniquely unreliable, or nonexistent. Those situations are not present here.

The majority relies heavily on *Curlee v. State* where an officer testified that a playground was "open to the public."   620 S.W. 3d 767 (Tex. Crim. App. 2021).   As the majority describes it, *Curlee* held that the officer's opinion failed to prove that the playground was "open to the public" because his opinion was unsupported.   But the officer's opinion was not just unsupported—it was contradicted by the officer himself and by other evidence.

The playground was on a church's private property.   *Id.* at 776-77.   Photographs showed the playground was surrounded by a chain-link fence that had four gates that could be locked, and two were locked.   *Id.*   Fences mean stay out.   *Id*. at 781.   The church tried to close the playground to the public, and even if its attempt was "inadequate," the playground was not open to the public.   *Id.*   The officer's own testimony "plainly contradicted" his conclusion that the playground was open to the

public. *Id.* at 786. We held that the officer's testimony failed to prove that the playground was open to the public—not because his opinion lacked support, but because other facts contradicted his opinion. No such countervailing evidence was presented here. Ordinarily, we defer to a jury's resolution of conflicts in the evidence. *Hooper v. State*, 214 S.W.3d, 9, 13 (Tex. Crim. App. 2007). *Curlee* was an outlier because of its peculiar issue and facts, and it does not apply here.

The majority cites *Winfrey v. State*, which held that "dog-scent lineup evidence alone" cannot support a guilty verdict. 323 S.W.3d 875, 884-85 (Tex. Crim. Ap. 2010). *Winfrey* noted the unique unreliability of such evidence; it does not support the majority's claim about the legal insufficiency of "unsupported opinions."

In the remaining cases cited by the majority, there was no evidence of an element:

- *Brister v. State* — Testimony that a motor vehicle could cause serious bodily injury did not prove that it was used in such a manner. 449 S.W.3d 490, 492, 494-95 (Tex. Crim. App. 2014).

- *Flores v. State* —Testimony that a drill could be used to cause serious bodily injury did not prove that the defendant used or intended to use it in such a manner. 620 S.W.3d 154, 160-62 (Tex. Crim. App. 2021).

- *Garcia v. State* —Testimony that a child was "cold" and "very scared" did not prove that the child suffered bodily injury, and testimony that the child's condition "could" possibly lead to injury did not prove an imminent danger of injury. 367 S.W.3d 683, 688-90 (Tex. Crim. App. 2012).

- *Edwards v. State* — Testimony that a child could potentially or hypothetically suffer harm from ingesting cocaine in breast milk did not prove that the child did suffer harm. 666 S.W.3d 571, 576 (Tex. Crim. App. 2023).

The majority misreads and so misapplies the foregoing cases. Two were peculiar, and the others simply lacked evidence. They do not support the majority's argument that opinion testimony is legally insufficient absent other support. And even if they did, the supposed opinion testimony here was otherwise supported.

## III. Inference vs. speculation

The majority erroneously claims that the jury could not reasonably infer that the parking lot was under the control of the Crying Shame because such a conclusion amounted to mere speculation.

Juries may draw conclusions based on reasonable inferences. *Hooper*, 214 S.W.3d at 16. A reasonable inference is reached by considering other facts and deducing a logical consequence from them. *Id.* Speculation is mere theorizing or guessing about the possible meaning of facts and evidence presented. *Id.*

The majority claims that the witnesses here did not testify to "observable facts." It suggests that a witness must have "personal knowledge" or "familiarity with the business or parking lot" to say they belong to same premises; and reaching a conclusion from merely looking at the property amounts to speculation. But a parking lot's proximity to one business and remoteness from others would support a reasonable inference of control by the closer business and would not be speculation. *See also*, *Vaughn v. State*, 493 S.W.2d 524, 526 (Tex. Crim. App. 1972) (lay witnesses can express an opinion of whether a person is intoxicated based solely on observation). A person

may also infer control from his observations of, for example, signage, designated parking spots, and maintenance or security measures taken by a business.

Here, the jury saw that the parking lot was right by the Crying Shame. It heard testimony that Appellant's motorcycle was parked mere feet from the Crying Shame's front door. It was so close to the bar that someone threw his gun onto the roof of the bar during the fight. The jury also heard that Crying Shame management called the police to stop the fight in the parking lot. A witness described the layout of the parking lot in detail: its exit and traffic direction and its position in relation to the bar, another parking lot, and an adjacent road. She concluded that the parking lot was "on the property of the Crying Shame." Other witnesses also said that the fight happened "in the parking lot of the Crying Shame." From these facts, the jury could reasonably find that the parking lot was "directly or indirectly under the control" of the Crying Shame.

The majority argues that a business may not "necessarily" control a parking lot that is near or connected to it. But "necessarily" is not the standard of review.

## Conclusion

I would uphold the trial court's judgment and reverse that of the court of appeals. Because the majority does not, I respectfully dissent.


Filed: May 22, 2024

Publish