Camelot Event Driven Fund v Morgan Stanley & Co., LLC (2024 NY Slip Op 01866)

Camelot Event Driven Fund v Morgan Stanley & Co., LLC

2024 NY Slip Op 01866

Decided on April 04, 2024

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: April 04, 2024

Before: Kern, J.P., Singh, González, Pitt-Burke, Rosado, JJ. 

Index No. 654959/21 Appeal No. 1991 Case No. 2023-00983 

[*1]Camelot Event Driven Fund etc., et al., Plaintiffs-Respondents-Appellants,
v
Morgan Stanley & Co., LLC, et al., Defendants-Appellants-Respondents, Viacomcbs, Inc., et al., Defendants-Respondents.

Securities Industry and Financial Markets Association, Amicus Curiae, The American Bankers Association, Amicus Curiae, Former Sec Officials and Law Professors, Amicus Curiae, Former United States Securities and Exchange Commission Chair Jay Clayton and Former Sec Director of The Division of Market Regulation Brandon Becker, Amici Curiae, Former Sec Acting Chair and Commissioners and Law Professors, Amici Curiae, The National Conference on Public Employee Retirement Systems, Amicus Curiae.

Paul Weiss, Rifkind, Wharton & Garrison LLP, New York (Kannon K. Shanmugam of counsel), and Skadden, Arps, Slate, Meagher & Flom LLP, New York (Scott D. Musoff of counsel), for Morgan Stanley & Co., LLC and Goldman Sachs & Co., LLC, appellants-respondents.
Simpson Thacher & Bartlett LLP, New York (Jonathan K. Youngwood of counsel), for J.P. Morgan Securities, LLC, Citigroup Global Markets Inc., Siebert Williams Shank & Co., LLC, RBC Capital Markets, LLC, U.S. Bancorp Investments, Inc., TD Securities (USA) LLC, SG Americas Securities, LLC, CastleOak Securities, L.P., Samuel A. Ramirez & Company, Inc., Academy Securities, Inc., R. Seelaus & Co., LLC, BNY Mellon Capital Markets, LLC, Intesa Sanpaolo S.P.A., and ICBC Standard Bank PLC, appellants-respondents.
Cadwalader, Wickersham & Taft LLP, New York (Jason M. Halper of counsel), for Mizuho Securities USA LLC, appellant-respondent.
Latham & Watkins LLP, New York (Jason C. Hegt of counsel), for BNP Paribas Securities Corp., appellant-respondent.
Latham & Watkins LLP, New York (Richard D. Owens and William O. Reckler of counsel), for Mufg Securities America Inc., appellant-respondent.
Willkie Farr & Gallagher LLP, New York (Todd G. Cosenza of counsel), for SMBC Nikko Securities America, Inc., appellant-respondent.
Sidley Austin LLP, New York (Francesca E. Brody of counsel), for Wells Fargo Securities, LLC, appellant-respondent.
Bernstein Litowitz Berger & Grossmann LLP, New York (John Rizio-Hamilton of counsel), for respondents-appellants.
Sherman & Sterling LLP, New York (Adam S. Hakki of counsel), for respondents.
O'Melveny & Myers LLP, New York (Meaghan VerGow of counsel), for Securities Industry and Financial Markets Association, amicus curiae.
Weil, Gotshal & Manges LLP, Washington, DC (Mark A. Perry of counsel), for American Bankers Association, amicus curiae.
Orrick, Herrington & Sutcliffe LLP, New York (Darrell S. Cafasso of counsel), for former SEC officials and Law Professors focused on Federal Securities Law, amici curiae.
Wilmer Cutler Pickering Hale and Dorr LLP, New York (Andrew Rhys Davies of counsel), for former United States Securities and Exchange Commission Chair, Jay Clayton and former SEC Director of The Division of Market Regulation, Brandon Becker, amici curiae.
Klausner, Kaufman, Jensen & Levinson, Plantation, Florida (Stuart A. Kaufman of counsel), for former Acting Chair and Commissioners of the SEC and Professors of Law at Columbia Law School and NYU School of Law, amici curiae.
Kessler Topaz Meltzer Check LLP, Rador, PA (Matthew L. Mustokoff of counsel), for The National Conference on Public Employee Retirement Systems, amicus curiae.

Order, Supreme Court, New York County (Andrew Borrok, J.), entered on or about February 7, 2023, which, insofar appealed from, granted the motion of defendants ViacomCBS, Inc. (Viacom), Robert M. Bakish, and Katherine Gill-Charest to dismiss the corrected amended class action complaint pursuant to CPLR 3211 but denied the motions of the Underwriters [FN1] to dismiss said complaint, unanimously modified, on the law, to grant the motions of the Non-Trading Underwriters (NTUs),[FN2] BNP, and MUFG, and otherwise affirmed, without costs.
On March 22, 2021, Viacom announced its secondary offering of common stock and initial offering of preferred stock (the Offerings). The remaining defendants underwrote the Offerings. However, the Conflicted Defendants (i.e., Morgan Stanley, Goldman Sachs, Wells Fargo, BNP, and MUFG) allegedly already held considerable stock in Viacom in their role as prime brokers for nonparty Archegos Capital Management, LP (Archegos). Through indirect investments known as "total return swaps," Archegos is alleged to have concentrated its assets in Viacom and a few other securities, while facing exposure many times greater than its total assets. The complaint alleges that Archegos and the Conflicted Defendants concealed Archegos' position from the public. By March 23, 2021, Viacom had determined the share price. Sales began the following day, on March 24. This slightly lowered the stock price for Viacom, straining Archegos' finances. Allegedly, by this time, the Conflicted Defendants knew that Archegos already faced significant financial pressure and could not effect its intention to participate in the Offerings. Archegos' brokers are alleged to have made "margin calls" for more collateral. On March 25, according to the complaint, Archegos informed the Conflicted Defendants that it could not meet their margin calls. The Conflicted Defendants then sold large volumes of their Viacom stock, which far exceeded the number of shares available in the Offerings. This significantly reduced the value of the stock plaintiffs purchased in the Offerings.
Plaintiffs now sue under sections 11 and 12 of the Securities Act of 1933 (15 USC §§ 77k; 77l). The parties agree that the potential for liability under section 11 attached on March 24, 2021. Defendants assert that potential liability under section 12 attached on the same date. We need not resolve defendants' assertion, because plaintiffs have alleged facts from which one can infer that by March 24, the Conflicted Defendants already intended to sell their Archegos-related holdings. Those holdings included vast amounts of Viacom stock.
Although no statement in the Offering materials was literally false, "literal accuracy is not enough: [a defendant] must as well desist from misleading investors by saying one thing and holding back another" (Omnicare, Inc. v Laborers Dist. Council Constr. Indus. Pension Fund, 575 US 175,192 [2015]; see e.g. Kohl v Loma Negra Cia. Indus. Argentina S.A., 195 AD3d 414, [*2]415-416 [1st Dept 2021]; see also Fed. Hous. Fin. Agency v Nomura Holding Am., Inc., 873 F3d 85, 140 [2d Cir 2017]["The falsity inquiry requires an examination of defendants' representations, taken together and in context. The literal truth of an isolated statement is insufficient."] [internal citations and quotation marks omitted], cert denied 588 US &mdash, 138 S Ct 2679 [2018]). The test as to whether an omission makes a statement materially misleading is whether the omitted fact(s) would "significantly alter the total mix of information made available to a reasonable investor" (Jianming Lyu v Ruhnn Holdings Ltd., 189 AD3d 441, 441-442 [1st Dept 2020] [brackets and internal quotation marks omitted], lv denied 36 NY3d 912 [2021]).
The Offering materials included the following statements:
In order to facilitate the offering of the Class B common stock, the underwriters may engage in transactions that stabilize, maintain or otherwise affect the price of the Class B common stock. Specifically, the underwriters may sell more shares than they are obligated to purchase under the underwriting agreement, creating a short position. . . . As an additional means of facilitating this offering, the underwriters may bid for, and purchase, shares of common stock in the open market to stabilize the price of the common stock. These activities may raise or maintain the market price of the common stock above independent market levels or prevent or retard a decline in the market price of the common stock.
We have granted to the underwriters an option, exercisable for 30 days from the date of this prospectus supplement, to purchase up to 3,000,000 additional shares of Class B common stock at the public offering price listed on the cover page of this prospectus supplement, less underwriting discounts and commissions.
Our directors, our executive officers and National Amusements, Inc., our controlling stockholder, have entered into lock- up agreements with the underwriters prior to the commencement of this offering pursuant to which each of these persons, with limited exceptions, for a period of 45 days lifer the date of this prospectus supplement, may not, without the prior written consent of Morgan Stanley & Co. LLC, offer, pledge, sell, contract to sell . . . or otherwise transfer or dispose of, directly or indirectly, any shares of Class B common stock . . . .
The statement that the underwriters "may engage in transactions that . . . affect the price of" the stock could be found misleading if the Conflicted Defendants already intended to do so (see Securities and Exch. Commn. v Thompson, 238 F Supp 3d 575, 598-599 [SD NY 2017]), especially given that the transactions would certainly not "raise or maintain" the price of the stock. At this procedural stage, the lock-up and allotment agreements also could be found misleading, in that that they arguably suggest that defendants did not intend to perform significantly greater transactions (see In re Sterling Foster & Co[*3]., Inc. Sec. Litig., 222 F Supp 2d 216, 265-266 [ED NY 2002]). A reasonable investor could find it significant that while Viacom was offering $3 billion of equities, the Conflicted Defendants planned to sell their own holdings of Viacom, which amounted to much more (see id. at 263-264 ["Had the plaintiffs been aware of these agreements, they would have known that anywhere from one-third-to three times the number of shares in the offering would be released into the aftermarket (and) that (defendant) had, at its disposal, a number of shares that was one-third-to-three times the number of shares offered to the public."]; see also Richman v Goldman Sachs Group, Inc., 868 F Supp 2d 261, 279 [SD NY 2012] [finding material alleged omissions that defendant's interest in its short position exceeded that of its long position]).
At least as to section 11,[FN3] the Conflicted Defendants also had a duty to disclose "any transaction that the underwriter intends to conduct during the offering that stabilizes, maintains, or otherwise affects the market price of the offered securities" (17 CFR 229.508[l][1] [emphasis added]; see In re WorldCom, Inc. Sec. Litig., 346 F Supp 2d 628,657 [SD NY 2004] [finding duty under section 11 to comply with federal regulation S-K]). They did not have such a duty under items 505 or 512, however, because their alleged secret holdings and intentions were not "considered in determining [the] offering price" (17 CFR 229.505[a]), and item 512 imposes a duty only on the "registrant" (17 CFR 229.512), i.e., the issuer. Additionally, rule 5270 of the Financial Industry Regulatory Authority does not cover registration statements and prospectuses (cf. In re Morgan Stanley Tech. Fund Sec. Litig., 643 F Supp 2d 366, 378 n 7 [SD NY 2009], affd sub nom. In re Morgan Stanley Info. Fund Sec. Litig., 592 F3d 347 [2d Cir 2010]) and would not confer a private right of action if it did (see Richman, 868 F Supp 2d at 275 & n 5).
Defendants argue that they cannot be liable due to the ethical wall or information barrier between the Conflicted Defendants' underwriting and brokerage departments. Plaintiffs have adequately alleged that Defendants did not implement any such barrier that would prevent the spread of pertinent information. At the pleading stage, the mere possibility that such barriers may have existed does not warrant dismissal of the complaint.
Defendants and their amici also protest that banks would be required to reveal confidential information about their clients, but that is not necessarily the case. Defendants could simply have disclosed that the Underwriters held positions in Viacom's stock and that they intended to sell those positions, which would lower the price of the Offering stock. They did not have to mention Archegos.
The motion court properly dismissed the claims against Viacom (see Matter of NIO Inc. Sec. Litig., 211 AD3d 464, 466 [1st Dept 2022]). Contrary to plaintiffs' claim, the part of NIO that said, "NIO could not have disclosed [*4]what it did not know" (id.) was not limited to item 303 of regulation S-K (17 CFR 229.303).
Since the section 11 and 12 claims against Viacom were properly dismissed, the section 15 (control liability) claim against Bakish and Gill-Charest was also correctly dismissed (see NIO, 211 AD3d at 466).
The NTUs contend that, based on NIO, the claims against them should have been dismissed — like Viacom, they could not have disclosed what they did not know. We find this argument persuasive and, therefore, dismiss the claims against the NTUs.
Because it denied the NTUs' motion, the court found it unnecessary to decide whether BNP, MUFG, and Wells Fargo were Conflicted Defendants. However, in light of our decision, it matters whether these defendants are Conflicted Defendants or NTUs. We rule that BNP and MUFG are not Conflicted Defendants but that Wells Fargo is. None of these defendants is alleged to have engaged in total return swaps with Archegos. Although BNP and MUFG are affiliated with entities that did, "affiliated corporations are, as a rule, treated separately and independently . . . absent a demonstration that there was an exercise of complete dominion and control" (Sheridan Broadcasting Corp. v Small, 19 AD3d 331, 332 [1st Dept 2005]), and the Second Circuit has "decline[d] to expand liability under sections 11, 12(a)(2), and 15 to require . . . offering participants to make disclosures regarding affiliates that are not otherwise called for by the securities laws" (Morgan Stanley, 592 F3d at 352). Wells Fargo, however, provided prime brokerage services to Archegos. Drawing inferences in favor of
plaintiffs, even if it did not engage in total return swaps, it could — and, allegedly, did — issue margin calls and sell the shares that it held as collateral. THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT. 
ENTERED: April 4, 2024

Footnotes

Footnote 1: The Underwriters are defendants Morgan Stanley & Co. LLC, Goldman Sachs & Co. LLC, J.P. Morgan Securities, LLC, Citigroup Global Markets Inc., Siebert Williams Shank & Co., LLC, RBC Capital Markets, LLC, U.S. Bancorp Investments, Inc., TD Securities (USA) LLC, SG Americas Securities, LLC, CastleOak Securities, L.P., Samuel A. Ramirez & Company, Inc., Academy Securities, Inc., R. Seelaus & Co., LLC, BNY Mellon Capital Markets, LLC, Intesa Sanpaolo S.P.A., ICBC Standard Bank plc, SMBC Nikko Securities America, Inc., Mizuho Securities USA LLC, MUFG Securities Americas Inc. (MUFG), Wells Fargo Securities, LLC (Wells Fargo), and BNP Paribas Securities Corp. (BNP).

Footnote 2: The NTUs are all Underwriters except Morgan Stanley, Goldman Sachs, Wells Fargo, BNP, and MUFG Securities Americas. Plaintiffs call the latter "Conflicted Defendants."

Footnote 3: The parties dispute whether section 12 imposes liability for the absence of a required disclosure. Because section 11 could impose this liability, we need not resolve the dispute as to section 12.